# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EL PASO NATURAL GAS COMPANY**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 07-00905  RJL |
| | § | |
| **UNITED STATES OF AMERICA**, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |

## PLAINTIFF EPNG'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE

Thomas L. Sansonetti, D.C. Bar No. 949610
HOLLAND & HART, LLP
2515 Warren Avenue, Suite 450
Cheyenne, Wyoming  82001
307.778.4200

William G. Myers III, D.C. Bar No. 408573
HOLLAND & HART, LLP
U.S. Bank Plaza
101 S. Capitol Boulevard, Suite 1400
Boise, Idaho  83702
208.342.5000

Jerry Stouck, D.C. Bar No. 343400
Robert L. Shapiro, D.C. Bar No. 415854
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, N.W., #500
Washington, DC  20006
202.331.3100

David G. Palmer
Brian L. Duffy
Naomi G. Beer, D.C. Bar No. 450875
Christopher J. Neumann, D.C. Bar No. CO0044
GREENBERG TRAURIG, LLP
The Tabor Center
1200 Seventeenth Street
Twenty-Fourth Floor
Denver, Colorado  80202
303.572.6500

Dated:  September 12, 2007

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................1

II.  FACTUAL BACKGROUND........................................................................3

    A.  Nature of This Action .................................................................. 4

    B.  EPNG's UMTRCA Claim ............................................................ 5

    C.  EPNG's RCRA Claims................................................................. 6

III.  LEGAL STANDARD FOR DECISION .....................................................9

IV.  ARGUMENT ............................................................................................10

    A.  Venue Is Indisputably Proper In This District For EPNG's
        UMTRCA Claim.......................................................................... 10

    B.  The District Of Columbia Is A Proper Venue For EPNG's
        RCRA Claims .............................................................................. 11

        1.  The Plain Language of RCRA's Venue Provisions
            Provide a Choice of Venue Where Violations And Endangerment Are
            Alleged in Different Locations ..................................... 12

        2.  This District Is The Appropriate Forum To Hear EPNG's
            Alleged Multiple RCRA Violations.............................. 16

    C.  The Pendent Venue Doctrine Applies Here And Resolves Any
        Possible Objection To Venue In This District For EPNG's
        Subsection (a)(1) RCRA Claims................................................... 18

    D.  Defendants Failed To Establish That Change Of Venue To Arizona
        Is Warranted................................................................................ 23

V.  CONCLUSION.........................................................................................31

i

## <u>TABLE OF AUTHORITIES</u>

<u>Federal Cases</u>                                                                                    <u>Page</u>

*2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50 (D.D.C. 2001) ............................ 9

*Adams v Bell*, 711 F.2d 161 (D.C. Cir. 1983) ................................................................ 24

*Airline Pilots Ass'n v. Eastern Air Lines,* 672 F. Supp. 525 (D.D.C. 1987) ................................ 24

*Akiachak Native Community v. Dep't of Interior*, 2007 WL 2367754
    (D.D.C. Aug.21, 2007) ........................................................................... 26

*Armco Steel Co. v. CSX Corp.*, 790 F. Supp. 311 (D.D.C. 1991) ............................................ 24

*Bartel v. FAA*, 617 F. Supp. 190 (D.D.C. 1985) ........................................................... 15

*Bartman v. Cheney*, 827 F. Supp. 1 (D.D.C. 1993) ........................................................ 10

*Basel Action Network v. Maritime Admin.*, 370 F. Supp. 2d 57 (D.D.C. 2005) ........................... 18

\*    *Beattie v. United States*, 756 F.2d 91 (D.C. Cir. 1984) .......................................... 20

*Blue Legs v. U.S. Bureau of Indian Affairs*, 867 F.2d 1094 (8th Cir. 1989) ............................... 12

*Boggs v. United States*, 987 F. Supp. 11 (D.D.C. 1997) .................................................... 22

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ..................................... 23

*City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328 (1994) ................................................. 12

*Crane v. New York Zoological Soc'y*, 894 F.2d 454 (D.C. Cir. 1990) ..................................... 9, 16

\*    *Daquila v. Schlosberg*, 253 F.2d 888 (D.C. Cir. 1957) .......................................... 24

*Deloach v. Philip Morris Cos., Inc.,*132 F. Supp. 2d 22 (D.D.C. 2000) .................................... 27

*First Health Group Corp. v. Sanderson Farms, Inc.*, 2000 WL 139474
    (N.D. Ill. 2000) .............................................................................. 29

\*    *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124  (D.D.C. 2001) ................ 26, 28

*Green v. Footlocker Retail, Inc.*, 2005 WL 1330686 (D.D.C. June 3, 2005) ............................... 29

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ............................................................ 24

*Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 939 F. Supp 1
    (D.D.C. 1996) ................................................................................ 28

*Helsel v. Tishman Realty & Constr. Co., Inc.*, 198 F. Supp. 2d 710 (D.Md. 2002) .............. 29, 30

*Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000) ...................... 21

*In Re Cheney*, 334 F.3d 1096 (D.C. Cir. 2003) ........................................................... 23

*Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 1984 WL 3656 (D.D.C. 1984) .............. 29

*Int'l Brotherhood of Painters & Allied Trades Union v.Best Painting
    Sandblashing Co. Inc.*, 621 F. Supp. 906 (D.D.C. 1985) ...................... 24

*James v. England*, 332 F. Supp. 2d 239 (D.D.C. 2004)................................... 9

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ...................... 23

*Kartseva v. Dep't of State,* 37 F.3d 1524 (D.C. Cir. 1994) ...................... 23

\* *Laffey v. Northwest Airlines, Inc.,* 321 F. Supp. 1041 (D.D.C. 1971) .................................... 19, 20

*Motorola, Inc. v. PC-Tel*, 58 F. Supp. 2d 349 (D. Del. 1999) ......................28-29

*Nat'l Wildlife Federation v. Harvey*, 437 F. Supp. 2d 42 (D.D.C. 2006) ...................... 27

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Frasch*, 751 F. Supp. 1075
    (S.D.N.Y. 1990)....................................................................... 23

*New Mexico v. Watkins*, 783 F. Supp. 633 (D.D.C. 1992), *aff'd & rev'd* in part
    969 F.2d 1122 (D.C. Cir. 1992) ...................................................... 17

*Norkol/Fibercore, Inc. v. Gubb,* 279 F. Supp. 2d 993 (E.D. Wis. 2003)...................................... 21

*NRDC v. Southwest Marine, Inc.,* 945 F. Supp. 1330 (S.D. Cal. 1996) ...................... 16, 17

*Oudes v. Block*, 516 F.Supp. 13 (D.D.C. 1981)........................................... 26

*Reuber v. United States*, 750 F.2d 1039 (D.C. Cir. 1984) ............................ 20

*SEC v. Hart*, 1978 WL 1091 (D.D.C. 1978)............................................... 29

*Sierra Club v. Edwards,* No. 81-1368, U.S. Dist. LEXIS 17625 (D.D.C. April 18, 1983).......... 10

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970),
    *cert. denied,* 401 U.S. 910 (1971)................................................ 24

*Smith v. Dalton*, 927 F. Supp. 1 (D.D.C. 1996) .................................... 10

\* *Solow Building Co., LLC v. ATC Associates, Inc.*, 175 F. Supp. 2d
    465 (E.D.N.Y. 2001)................................................................ 20

\* *Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.,*
    196 F. Supp. 2d 21 (D.D.C. 2002)............................................ 9, 24, 29

\* *Town of Warwick, N.Y. v. New Jersey Dep't of Envtl. Prot.*, 647 F. Supp. 1322
    (S.D.N.Y. 1986).................................................................. 14, 15

*Trout Unlimited  v. U.S. Dep't of Agric.*, 944 F. Supp. 13 (D.D.C. 1996)................. 28

*United States v. Johnson & Towers, Inc.*, 741 F.2d 662 (3d Cir. 1984) ...................... 11

*United States v. Wasserson,* 418 F.3d 225 (3d Cir. 2005) ............................ 12

*United Tech. Corp. v. EPA*, 821 F.2d 714 (D.C. Cir. 1987) ........................... 11

*Valley Comty. Pres. Comm'n v. Mineta*, 231 F. Supp. 2d 23 (D.D.C. 2002)................ 27

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ......................................... 23

*Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000) ........................ 26, 29

*Wirtz v. Cascade Employer's Ass'n, Inc., of Pac. Nw.*, 219 F. Supp. 84

(D.D.C. 1963) ................................................................................................................ 17

<u>Federal Statutes and Regulations</u>

15 U.S.C. § 2619 .......................................................................................................... 14

28 U.S.C. § 1391 .......................................................................................................... 14

28 U.S.C. § 1391(e) .................................................................................................. 1, 10

28 U.S.C. § 1404(a) ...................................................................................................... 23

28 U.S.C. § 1406(a) ...................................................................................................... 23

33 U.S.C. 1365 ............................................................................................................. 13

42 U.S. C. § 6901, *et seq.* ..................................................................................... passim

42 U.S.C. § 7604 .......................................................................................................... 13

42 U.S.C. § 7901 *et seq.* ........................................................................................ passim

40 C.F.R. Parts 262, 264, 265, 268, 270 ....................................................................... 8

<u>Other Authorities</u>

14 Wright, Miller & Cooper, Federal Practice & Procedure

3d § 3808 ................................................................................................................ 19

17 Moore's Federal Practice § 110.31 .......................................................................... 10

**\*  Cases principally relied upon.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **EL PASO NATURAL GAS COMPANY**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 07-00905  RJL |
| | § | |
| **UNITED STATES OF AMERICA**, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |

**PLAINTIFF EPNG'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
OR TRANSFER FOR IMPROPER VENUE**

Plaintiff El Paso Natural Gas Company ("EPNG") respectfully submits this memorandum in
opposition to Defendants' motion to dismiss for improper venue, or, in the alternative, to
transfer.

## I.    INTRODUCTION

Because venue properly lies in this district for all claims stated in EPNG's amended
complaint, and for the additional reasons set forth below, Defendants' motion to dismiss or
transfer for improper venue should be denied.

First, venue is proper in this district under 28 U.S.C. § 1391(e), and not disputed by
Defendants, for EPNG's primary claim under the Uranium Mill Tailings Radiation Control Act
("UMTRCA"), 42 U.S.C. § 7901 *et seq.* (the "UMTRCA Claim").  As set forth in the amended
complaint, and summarized below, Congress intended pursuant to UMTRCA for the Department
of Energy ("DOE") to remediate all uranium processing sites and their "vicinity properties," *see*
42 U.S.C. § 7901(b)(1).  The sites here at issue (the "Properties") are precisely such "vicinity

properties." DOE therefore has the obligation under UMTRCA to remediate them. A ruling in EPNG's favor on this UMTRCA Claim would entirely resolve this matter and would obviate the need for any ruling on EPNG's secondary and alternative claims under the Resource Conversation and Recovery Act ("RCRA"), 42 U.S. C. § 6901 *et seq.* (the "RCRA Claims"). The critical point requiring rejection of Defendants' motion is that the statutory venue provision applicable to EPNG's primary UMTRCA Claim allows venue for such claims in the District of Columbia.

Second, and contrary to the government's arguments, venue is also proper in this district for EPNG's RCRA Claims. EPNG brings RCRA citizen suit claims against Defendants under 42 U.S. C. § 6972 (a)(1)(A), (a)(1)(B) and (a)(2). For its claims under section 6972(a)(1)(A), EPNG alleges that Defendants violated RCRA both at the Properties in Arizona where Defendants performed treatment, storage and disposal operations without meeting RCRA requirements, and in the District of Columbia where agency decision-making, permit submittals and recordkeeping occurred or should have occurred. *See* Am. Compl. ¶¶ 11, 105, 106. For its claims under section 6972(a)(1)(B), EPNG alleges Defendants contributed to an imminent and substantial endangerment at the Properties in Arizona. *Id. ¶ 10.* For its claims under section 6972(a)(2), EPNG alleges EPA failed to perform a non-discretionary duty by failing to conduct certain annual inspections at the Properties. *Id. ¶ 111.*

Because EPNG alleges RCRA violations in the District of Columbia, and further alleges that EPA failed to perform a non-discretionary duty under RCRA, EPNG was entitled pursuant to the express venue provisions included in section 6972 to bring its RCRA Claims in the District of Columbia. That RCRA venue provision provides that: "Any action under paragraph (a)(1) of this subsection shall be brought in the district court for the district in which the alleged violation

occurred [*i.e.,* here, either the District of Columbia or Arizona] *or* the alleged endangerment may occur [here, Arizona]. Any action brought under paragraph (a)(2) of this subsection may be brought in the district court for the district in which the alleged violation occurred *or* in the District Court of the District of Columbia." *See* 42 U.S.C. § 6972(a) (emphasis added). Under the alternative venue options expressly provided by this provision, EPNG has properly venued its RCRA Claims in this district.

Third, and alternatively, Defendants' arguments against use of the "pendent venue" doctrine are misplaced and should be rejected. Because venue is indisputably proper in this district for EPNG's primary UMTRCA Claim – and adjudication of that Claim could resolve the entire controversy now before the Court – both precedent and judicial economy strongly counsel application of the pendent venue doctrine here. The Court should retain the entire case for this reason as well, and thereby honor the venue choice that EPNG as plaintiff was entitled to make.

Fourth, for many of the same reasons that establish proper venue for EPNG's claims in this district, this district is the most efficient and convenient forum for resolution of all of EPNG's claims, and numerous relevant factors favor venue in this district, not in Arizona. Defendants have therefore failed to meet their burden to demonstrate that a change of venue to Arizona is warranted.

## II.    FACTUAL BACKGROUND

Defendants' motion focuses entirely on purported venue deficiencies in some, but not all, of EPNG's secondary and alternative RCRA Claims. In their rush to attack venue under RCRA, however, Defendants essentially ignore the fact that EPNG's primary claim is its UMTRCA claim.

3

### A.     Nature of This Action

Fundamentally, EPNG seeks in this action to establish federal responsibility for residual radioactive materials at the Properties, which are several sites close to a uranium ore processing mill near Tuba City, Arizona (the "Mill") that was operated as part of the government's cold war weapons program from approximately 1956 to 1966.  Specifically, the Properties consist of 1) a dump site immediately adjacent to the north-northwest of the Mill and on the north side of Highway 160, 2) the Tuba City Landfill, and 3) certain other sites near the Mill on the Navajo or Hopi Reservations or federal land.  EPNG alleges that these Properties are "vicinity properties" under UMTRCA.  *See* Am. Compl. ¶ 92.  EPNG further alleges that, notwithstanding DOE's statutory obligation to designate such "vicinity properties" to the maximum extent practicable and to complete remedial action at such sites before its authority terminates, DOE has spurned these Congressional directives and arbitrarily and capriciously elected not to designate or remediate the Properties as "vicinity properties" under UMTRCA.  *Id.* ¶ 99.

RCRA is a separate statute under which the federal government may have obligations and liabilities for its handling, management, generation, storage and disposal of solid and hazardous wastes at the Properties.  *See* Am. Compl. ¶ 77-87, 103, 112.  Although EPNG's UMTRCA Claim and RCRA Claims both seek to establish federal responsibility for the residual radioactive materials at the Properties, the UMTRCA Claim provides the most efficient and effective path to that result.  If EPNG establishes that DOE was required to remediate the Properties under UMTRCA, which is what its UMTRCA Claim alleges, then the RCRA Claims will never need to be addressed.  That is because the UMTRCA Claim and the RCRA Claims relate to the same nucleus of operative facts, they are pled in the alternative and they seek essentially the same

relief – that the federal government remediate residual radioactive contamination at the Properties which allegedly can be traced to the government's cold war weapons program.

In addition, RCRA categorically excludes from its requirements certain types of waste, including wastes that may be regulated under UMTRCA.  Indeed, EPNG alleges that the waste at issue here is residual radioactive material derived from the Mill which constitutes a "byproduct" under the Atomic Energy Act and UMTRCA.  *See id.* at ¶ 8.  Expecting that such wastes would be remediated under UMTRCA, Congress expressly carved out "byproduct" material from regulation under RCRA and other subsequently enacted or amended environmental laws.  *See*, *e.g.*, 42 U.S.C. § 6903(27) ("The term 'solid waste' means any . . . discarded material . . . but does not include . . . byproduct material as defined by the Atomic Energy Act . . . .").  In short, EPNG's RCRA Claim is merely a potential alternative avenue for establishing federal responsibility for the wastes in question, if EPNG does not prevail in establishing federal responsibility under its primary UMTRCA Claim.

## B.    EPNG's UMTRCA Claim

Under UMTRCA, DOE was required to designate and complete remedial action at both "processing sites" and properties in the vicinity of those sites, or "vicinity properties."  *See* 42 U.S.C. § 7912 (a) & (e).  The Mill is a processing site designated by DOE under UMTRCA.  *See* Am. Compl. ¶ 89.  "Vicinity properties" under UMTRCA include "any other real property which is "in the vicinity of" a processing site, and is "determined by the Secretary [of DOE], in consultation with [the Nuclear Regulatory] Commission ["(NRC)"], to be contaminated with residual radioactive materials derived from such site.  42 U.S.C. § 7911(6)(B)(ii).  EPNG's UMTRCA Claim alleges that DOE wrongfully failed to designate and remediate the Properties as vicinity properties.  *See* Am. Compl. ¶ 73-74, 99.

5

The Navajo Nation has informed EPNG that beginning in June 2003, it discovered residual radioactive materials, including but not limited to mill tailings, ceramic mill balls, yellowcake and other mill-related waste, at the Properties. *See id.* ¶ 68.   In December 2003, the Navajo Nation wrote a letter to DOE requesting that two of the Properties be investigated and remediated by DOE as vicinity properties under the agency's UMTRCA authority. *Id.* ¶ 69.  In April 2004, the government responded with its determination that the Properties addressed in the Navajo Nation's letter, and other properties adjacent to the Mill, were not vicinity properties under UMTRCA and, based on this determination, denied remediation of ground water contamination at these sites. *See id.* ¶ 70.   EPNG's UMTRCA Claim alleges that DOE's April 2004 decision not to designate the Properties as "vicinity properties" under UMTRCA, and its decision to deny remediation of ground water contamination at these sites, was arbitrary and capricious, not in accordance with the law, and constitutes an abuse of discretion under the Administrative Procedures Act ("APA"). *See id.* at ¶ 8.

### C.    EPNG's RCRA Claims

RCRA is a comprehensive statute intended to reduce the generation of hazardous waste and to ensure proper treatment, storage, and disposal of solid and hazardous waste.  RCRA's regulatory structure provides a multifaceted approach towards addressing the problems associated with hazardous waste by imposing separate requirements to the generation, transport, treatment, storage and disposal of such waste.  However, as noted above, in order to avoid overlap with laws that came before it, RCRA explicitly excludes "source, special nuclear, or byproduct material as defined by the Atomic Energy Act of 1954" ("AEA") from the definition of solid waste. *See* 42 U.S.C. § 6903(27).

6

Whether the residual radioactive waste materials at the Properties should be exclusively regulated under UMTRCA and carved out from RCRA, or alternatively are solid wastes regulated under RCRA, is a significant issue in this case.  To the extent that the wastes located at the Properties are regulated under RCRA, EPNG has alleged claims under the "citizen suit" provision of RCRA.  42 U.S.C. § 6972.

Section 6972 of RCRA provides citizens a mechanism for enforcing environmental requirements in instances when a regulating agency has not taken action or when supplemental enforcement may be necessary.  Paragraph (a)(1) of RCRA section 6972 allows a citizen to file an action to remedy *violations* of certain RCRA requirements or to abate an imminent or substantial *endangerment* to the public health or the environment.  Paragraph (a)(2) of RCRA section 6972 allows a citizen to ask a court to compel the EPA Administrator to perform a mandatory, *non-discretionary duty* under RCRA which the Administrator has failed to perform.

Here, EPNG has alleged claims under both subsections (a)(1) and (a)(2).

### EPNG's Section (a)(2) Non-Discretionary Duty Claim

EPNG's paragraph (a)(2) claim alleges that the EPA Administrator has failed to perform a duty that is mandatory under RCRA, *i.e.*, to conduct on an annual basis a thorough inspection of each facility on the Properties for the treatment, storage, or disposal of hazardous waste which is owned or operated by a department or agency of the United States to enforce compliance with RCRA Subtitle C.  *See* 42 U.S.C. § 6927(c).  Defendants have not challenged the propriety of venue in this district for EPNG's paragraph (a)(2) claim, and the claim is clearly properly brought here under the express terms of section 6972(a).

**EPNG's Section (a)(1) Violation and Endangerment Claims**

At issue in the Defendants' motion is the proper venue for the EPNG's paragraph (a)(1) claims.  EPNG brings claims against Defendants both under section 6972(a)(1)(A) for *violations* of RCRA requirements and under Section 6972(a)(1)(B) to abate an imminent and substantial *endangerment* to the environment created by Defendants' waste handling activities.

Notably, section 6972(a)(1)(A) imposes some requirements which are specific to facility operations and therefore must be implemented at the facility, and some requirements which are not specifically tied to the location of a facility.  Examples of facility-specific requirements include verifying the composition of incoming waste, meeting safety standards, and meeting land disposal requirements.  *See* 40 C.F.R. Parts 262, 264, 265, & 268.  Examples of non-facility-specific requirements include maintaining a manifest, recordkeeping, periodic reporting, and applying for and having a permit for the operation of a treatment, storage and disposal facility. *See* 40 C.F.R. Parts 262, 264, 265 & 270.

EPNG alleges that Defendants have been, and continue to be, in violation of RCRA requirements both in Arizona and in the District of Columbia.  With regard to Arizona, EPNG alleges Defendants are violating certain facility-specific requirements at the locations of the Properties.  For example, EPNG alleges the facilities owned and operated by Defendants on the Properties in Arizona are in ongoing non-compliance with treatment, storage and land disposal requirements for hazardous waste.  *See* Am. Compl. ¶ 77.  With regard to the District of Columbia, EPNG alleges Defendants are violating certain non-facility-specific requirements in the District of Columbia where agency decision-making, permit submittals and recordkeeping occur or occurred, or should occur or should have occurred.  For example, EPNG alleges the Defendants failed to apply for and have a permit for the operation of its treatment, storage and

disposal facilities located on the Properties.  *See id.*  EPNG alleges that, both at the time the latter requirements became effective and currently, the agency officials responsible for operating the facilities were located in the District of Columbia, and that is where they made the decisions not to comply with the applicable RCRA requirements and continue to make decisions not to comply with these requirements. *Id.*

### III.    LEGAL STANDARD FOR DECISION

When a court considers a motion to dismiss, factual allegations in the Complaint must be taken as true and any factual conflicts should be resolved in the plaintiff's favor.  *See Crane v. New York Zoological Soc'y*, 894 F.2d 454 (D.C. Cir. 1990); *see also James v. England*, 332 F. Supp. 2d 239 (D.D.C. 2004) (court must accept the "plaintiff's well-pled factual allegations regarding venue as true, draw reasonable inferences from those allegations in the plaintiff's favor, and resolve any factual conflicts in the plaintiff's favor").  To prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat the plaintiff's assertion of venue.  *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001).  In addition, Defendants, as the parties seeking to transfer venue, bear the "heavy burden" of proving that EPNG's choice of forum is improper and should be disturbed.  *See Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (denying motion to transfer venue).  Here, the allegations in the amended complaint show that all of EPNG's claims are properly venued in this Court.  In addition, Defendants have failed to meet their burden of proving that transfer of this case to Arizona is warranted.

## IV.    ARGUMENT

### A.    Venue Is Indisputably Proper In This District For EPNG's UMTRCA Claim

Venue is indisputably proper in this district for EPNG's UMTRCA Claim under 28 U.S.C. § 1391(e).  That subsection provides that, in an action like this one against government agencies and officials, venue is proper "in any judicial district in which (1) a defendant in the action resides [or] (2) a substantial part of the events or omissions giving rise to the claim occurred . . . .  *See* 28 U.S.C. § 1391(e).

In this case, all Defendants are federal agencies or agency heads, who perform significant work in the District of Columbia and therefore "reside" in this district for venue purposes.  *See, e.g., Smith v. Dalton*, 927 F. Supp. 1, 6 (D.D.C. 1996) ("The test is whether the officer or agency performs a 'significant amount' of his or her official duties there."); *Bartman v. Cheney,* 827 F. Supp. 1, 2 (D.D.C. 1993) ("[W]hile the Secretary of Defense may perform much of his work at the Pentagon, located in Virginia, he also performs a significant amount of his official duties in the District of Columbia. Venue is therefore is proper in this Court."); *see also* 17 Moore's Federal Practice, § 110.31 ("For purposes of  [§ 1391(e)], a federal agency sued in its own name is considered to be a resident of the District of Columbia.").  Most important for purposes of EPNG's UMTRCA Claim, both DOE and its Secretary, whose wrongful conduct is at the heart of the claim, have their principal office in the District of Columbia.  They thus not only "reside" here, making venue proper under subsection 1391(e)(1), but also performed in this district "a substantial part of the events or omissions giving rise to the [UMTRCA] claim," making venue for that claim proper here under subsection 1391(e)(2) as well.  *See Sierra Club v. Edwards,* No. 81-1368, 1983 U.S. Dist. LEXIS 17625 (D.D.C. Apr. 18, 1983) (adjudicating in this district

claim involving APA review of DOE's failure to designate vicinity properties "to the maximum extent practicable" as required by UMTRCA).

### B.    The District Of Columbia Is A Proper Venue For EPNG's RCRA Claims

Venue is also proper in this district for EPNG's RCRA Claims.  EPNG alleges a failure by the EPA Administrator to perform a non-discretionary duty under RCRA, and also alleges that Defendants committed violations of RCRA requirements in the District of Columbia. RCRA's citizen suit venue provision expressly provides, in 42 U.S. C. § 6972(a), that the former claim – cognizable under paragraph (a)(2) of section 6972 – may be brought in this district, and that the latter claim  – cognizable under paragraph (a)(1)(A) of section 6972 – may be brought where the violations occur, which also is in this district.  Defendants do not dispute that EPNG's paragraph (a)(2) claim is properly venued in the District of Columbia.  Rather, Defendants argue that because an endangerment occurs in Arizona, EPNG's claims alleging endangerment – cognizable under paragraph (a)(1)(B) of section 6972 – must be brought in Arizona, and for that reason venue is improper in this district for *all* of EPNG's claims.  *See* Mot. at 10-11.  Because Defendants seek to re-write RCRA's venue provision and to have this Court reject El Paso's well-pled allegations, their motion must be denied.

Defendants' assertion that RCRA violations "turn[] on the Federal Defendants' alleged conduct treating, storing, and disposing of waste at locations in Arizona," Mot. at 11, both misconceives the broad scope of RCRA's "cradle-to-grave" regulatory scheme and mischaracterizes the nature and breadth of EPNG's allegations.  RCRA's regulatory structure is intended by Congress to "provide a multifaceted approach towards solving the problems associated with" treatment and disposal of hazardous waste.  *United States v. Johnson & Towers*, *Inc.*, 741 F.2d 662, 666 (3d Cir. 1984); *see also United Tech. Corp. v. EPA*, 821 F.2d 714, 716

(D.C. Cir. 1987). Given RCRA's comprehensive scope, it should come as no surprise that a single transaction can involve violations in multiple locations. For example, in *United States v. Wasserson,* 418 F.3d 225, 233 (3d Cir. 2005), the Third Circuit noted that an individual could be convicted for separate RCRA offenses for illegally transporting hazardous waste without a manifest, transporting such waste to an unauthorized facility, and disposing of waste without a permit. As the court observed, these separate offenses involve distinct acts and thus "constitute separate offenses. . . [I]t is clear Congress intended to punish each act separately because of the separate dangers each pose." *Id.; see Blue Legs v. U.S. Bureau of Indian Affairs*, 867 F.2d 1094, 1098 n.3 (8th Cir. 1989) (transporting and burning solid waste are separate RCRA violations); *see also City of Chicago v. Envtl. Def. Fund*, 511 U.S. 328, 337 (1994) (City of Chicago violated RCRA by failing to comply with generator requirements in Chicago, and by sending waste for disposal at unlicensed facility in Michigan).

1.    **The Plain Language of RCRA's Venue Provisions Provide a Choice of Venue Where Violations And Endangerment Are Alleged In Different Locations**

The plain language of RCRA's venue provision provides for different potential venue locations in the circumstances of this case:

> Any action under paragraph (a)(1) of this subsection shall be brought in the district court for the district in which the alleged violation occurred *or* the alleged endangerment may occur. Any action brought under paragraph (a)(2) of this subsection may be brought in the district court for the district in which the alleged violation occurred *or* in the District Court of the District of Columbia.

*See* 42 U.S.C. § 6972(a) (emphasis added). Under this provision, EPNG can bring its paragraph (a)(2) claim either in the district "in which the alleged violation occurred" *or* in the District of Columbia. EPNG chose the District of Columbia and the government concedes that the claim is properly venued here. *See* Mot. at 1-2.

With respect to "[a]ny action under paragraph (a)(1)" of section 6972, the RCRA venue provision quoted above allows venue "in the district court for the district in which the alleged violation occurred *or* the alleged endangerment may occur."  This statutory text, which uses the disjunctive word "or" in listing the multiple locations in which an action may be filed, indicates that alternative proper venues may exist in a given case.  Here, EPNG has asserted multiple claims under paragraph (a)(1), alleging that Defendants are in violation of RCRA's requirements and that Defendants have contributed to an imminent endangerment to health or the environment.  Since EPNG's paragraph (a)(1) claims involve both violations and potential endangerment, the RCRA venue provision allows EPNG to choose venue among districts where the alleged violations or endangerment occurred.  Because EPNG alleged violations in both the District of Columbia and Arizona, venue is proper for EPNG's RCRA "action" in both the District of Columbia and Arizona.

Indeed, the separate treatment of violations and endangerment in the venue provision is an acknowledgement by Congress that these events may occur in different locations.  Had Congress determined that endangerment and violations would always arise at the location of the facility involved, it could have drafted the venue provision accordingly to limit actions to the district in which the facility is located.  Congress did just that in sister environmental statutes such as the Clean Water Act and the Clean Air Act, both of which provide for venue "only" in the district in which the pollution "source is located." [1]

---

[1]  *See* 33 U.S.C. 1365 (Clean Water Act) ("Any action respecting a violation by a discharge source of an effluent standard or limitation or an order respecting such standard or limitation may be brought under this section only in the judicial district in which such source is located"); 42 U.S.C. § 7604 (Clean Air Act) ("Any action respecting a violation by a stationary source of an emission standard or limitation or an order respecting such standard or limitation may be brought only in the judicial district in which such source is located").

Moreover, by providing that the "action under paragraph (a)(1)" shall be filed in one location "or" the other, Congress provided a choice of venues in situations, like this one, when an action involves multiple claims arising in different locations. Congress has commonly used this construction to provide venue alternatives. For example, Congress used this construction to provide alternatives in RCRA's venue provision for paragraph (a)(2) claims. Congress also used this construction in the citizen suit provision contained in the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2619, which allows a choice of three venue alternatives.[2]

Defendants' motion disregards EPNG's allegations that Defendants violated RCRA through agency decision-making, permit submittals and recordkeeping violations which occur in the District of Columbia, and focuses solely on Arizona as the location of the facilities and the threatened endangerment. But, as shown above, the RCRA venue provision is not so narrow. Certainly Congress knew how to draft narrow venue provisions and could have limited venue to the district in which the facility is located, as Congress did in the Clean Water Act and the Clean Air Act. RCRA's venue provision, however, was intended to be – and expressly is – more expansive. It permits venue in multiple places for adjudication of diverse statutory violations.

Although RCRA's venue provision applicable to paragraph (a)(1) claims refers to "violation" and "endangerment" in the singular (*i.e.*, claims shall be brought where the alleged "violation" occurs or the alleged "endangerment" may occur), where, as here, multiple RCRA violations are alleged to occur in different locations – some in locations different from where endangerment occurs – a plaintiff may file his or her RCRA "action" in any district where any one violation or endangerment occurs. *See*, *e.g.*, *Town of Warwick, N.Y. v. New Jersey Dep't of*

---

[2]  TSCA's venue provision states, "Any civil action under paragraph (1) shall be brought in the United States district court for the district in which the alleged violation occurred or in which the defendant resides or in which the defendant's principal place of business is located." *Id. See also* 28 U.S.C. § 1391 (providing multiple venue alternatives).

*Envtl. Prot.*, 647 F. Supp. 1322, 1324 (S.D.N.Y. 1986) (allowing venue for a RCRA citizen suit in the Southern District of New York where endangerment occurred both in that district and in the District of New Jersey). This is simply a corollary to the alternative venue options expressly provided by section 6972(a). It would be absurd given RCRA's broad scope to construe the venue provision's use of singular terms ("violation" and "endangerment") to mean that citizen suits or "actions" may only allege a single RCRA violation, and equally absurd to suggest that where multiple RCRA violations or endangerments relating to the same operations occur in different places, a separate action must be filed in a different venue for each such violation or endangerment.

To the contrary, when alternative proper venues exist, as in this case, plaintiff is free to choose the venue in which to file his or her action. *Town of Warwick, supra,* is instructive. That case arose out of a New Jersey Department of Environmental Protection ("DEP") clean-up project. *See id.* at 1323. The DEP undertook remedial efforts to excavate, drum, and dispose of contaminated soil surrounding homes in several New Jersey towns. *See id.* The agency planned to dispose of the soil in Vernon, New Jersey, a location one and a half miles from the New York/New Jersey border. *See id.* When the Town of Warwick, New York, brought suit in New York for violations of RCRA's endangerment provisions, arguing that the contaminated soil could make its way to the aquifer that supplied the city's water, the DEP moved to transfer the case to New Jersey. Although the court recognized that venue was appropriate in New Jersey, and although none of the treatment, storage, or disposal occurred in New York, because Warwick alleged an endangerment to the town the court concluded that venue was also appropriate in New York. *See id.* at 1324. Since "venue is as proper in this district, as in the District of New Jersey," the court denied the agency's motion. *Id.; cf Bartel v. FAA*, 617 F.

15

Supp. 190, 198 (D.D.C. 1985) (recognizing that, since several districts were proper venues for plaintiff's Title VII claim, plaintiff ought to be afforded "the initial choice as to which of the available forums is the most appropriate one in which to litigate his claim.").

Similar to what occurred in *Warwick*, here EPNG could bring its RCRA Claims in either the District of Columbia or Arizona, since EPNG alleges RCRA violations in both locations, and EPNG properly chose to bring its RCRA action in this district.

### 2.    This District Is The Appropriate Forum To Hear EPNG's Alleged Multiple RCRA Violations

For the purpose of Defendants' motion to dismiss, EPNG's allegations in its amended complaint must be accepted as true. *See Crane,* 894 F.2d at 460.  Among other things, EPNG alleges that Defendants have committed violations of RCRA in both the District of Columbia and Arizona.  Defendants have not presented any evidence or authority to contest those allegations. Accordingly, the uncontradicted facts set forth in the amended complaint are sufficient to establish that violations giving rise to EPNG's RCRA claims occurred in the District of Columbia, making venue proper in this Court.[3]

In addition, it is well established that decision-making-related violations can occur in a place other than where the waste facility is located.  *NRDC v. Southwest Marine, Inc.* illustrates this point.  *See* 945 F. Supp. 1330, 1333 (S.D. Cal. 1996).  There, plaintiffs challenged a

---

[3]  Defendants argue that EPNG could not have intended to allege violations in the District of Columbia since it did not send notice of intent to sue to the District of Columbia prior to filing its amended complaint, suggesting that EPNG thus failed to comply with RCRA's pre-suit notice requirements.  *See* Mot. at 12.  Defendants' argument is wrong on at least three grounds.  First, the amended complaint clearly alleges violations in the District of Columbia, and those allegations cannot be disregarded in resolving a motion to dismiss (at least in the absence of contrary evidence, and there is none).  Second, provision of notice to the District of Columbia was not required, nor would it conform to the Congressional intent underlying RCRA's notice provision.  Third, even if notice to D.C. were deemed to be appropriate, that fact does not inform the propriety of venue in this district.

company's failure to develop and implement a best practices program and a monitoring and reporting plan as required by the Clean Water Act. *See id.* at 1332-33. In their notice letter, plaintiffs described the location of the violations as the company's "corporate headquarters." *Id.* at 1333. Reasoning that this type of violation is "not like a discharge from one pipe at an industrial location," but, rather, involves the failure to prepare requisite plans, the court upheld the description in the notice as proper. *Id.* Similarly here, EPNG's paragraph (a)(1) claims allege decision-making violations at the federal Defendants' "headquarters" in the District of Columbia.

This Court has not hesitated to hear RCRA suits in analogous situations. In *New Mexico v. Watkins*, 783 F. Supp. 633, 635 (D.D.C.), *aff'd & rev'd in part,* 969 F.2d 1122 (D.C. Cir. 1992), for example, intervener environmental groups brought a RCRA citizen suit in this district against the DOE alleging the agency's failure to either obtain interim status or acquire a permit to operate a New Mexico facility. Nowhere in the opinion does the court address, and certainly the governmental agency does not appear to have contested, the issue of venue. Rather, both the parties and the court appear to have agreed that the permitting violation occurred in the District of Columbia and, thus, the RCRA permitting claims were appropriately brought in this district despite the fact that the facility was located in New Mexico. This is consistent with this Court's recognition in *Wirtz v. Cascade Employer's Ass'n, Inc., of Pac. Nw.*, 219 F. Supp. 84, 87 (D.D.C. 1963), that venue for a failure-to-report claim may be proper in the district where defendants had their principal place of business, "since that would normally be the place to find records and other information necessary for the preparation of the report, and witnesses and documents necessary for trial."

Similarly, in *Basel Action Network v. Maritime Admin*., 370 F. Supp. 2d 57, 77-78 (D.D.C. 2005), plaintiffs brought a RCRA citizen suit claim (among others) in the District of Columbia alleging the government's failure to provide a RCRA export notice before it shipped several defunct naval vessels containing toxic substances from Virginia to the United Kingdom. Again, the government did not challenge venue. Instead, the government filed an answer to plaintiff's complaint in which it responded to plaintiff's allegation that the court had jurisdiction to hear a RCRA citizen suit filed in the District of Columbia and alleging violations at a facility in Virginia, by conceding facts supporting venue under such circumstances: "Defendants admit that they have offices located in this judicial district and that the decisions challenged by Plaintiffs were made within this judicial district." Defendant's Answer to Plaintiff's Second Amended Complaint for Declaratory and Injunctive Relief at 4, *Basel Action Network v. Maritime Admin.*, 370 F. Supp. 2d 57 (D.D.C. 2005) (Civ. No. 03-02000-RMC).

Ultimately, RCRA venue is proper in this Court under section 6972(a) not only because that statute expressly permits venue here for EPNG's paragraph (a)(2) "non-discretionary duty" claim, but also because the Defendants are located in the District of Columbia and it is here that they committed at least some of the paragraph (a)(1) RCRA violations alleged in the amended complaint. These circumstances are more than sufficient to make the District of Columbia the proper venue for EPNG's RCRA Claims. Defendants' assertion that the RCRA violations occurring in this district relate to their conduct in treating, storing and disposing of waste at locations in Arizona is irrelevant.

**C.    The Pendent Venue Doctrine Applies Here And Resolves Any Possible Objection To Venue In This District For EPNG's Subsection (a)(1) RCRA Claims**

Even if venue were not independently proper in this district for EPNG's paragraph (a)(1) RCRA Claims, the Court should find venue proper here for those claims under the doctrine of

18

pendent venue.  Under that doctrine, Defendants' arguments against venue for the paragraph

(a)(1) RCRA claims would be unavailing even if they were correct, and indeed the Court need

not even confront the RCRA venue issues raised in Defendants' motion.  "Since venue is proper

for the principal cause of action this Court need not decide whether it is proper for the secondary

cause of action."  *Laffey v. Northwest Airlines, Inc.*, 321 F. Supp. 1041, 1042 (D.D.C. 1971); *see*

14 Wright, Miller & Cooper, Federal Practice & Procedure 3d § 3808 (hereafter, "Wright &

Miller") ("[A] growing number of federal courts recognize and apply the doctrine of 'pendent

venue,' according to which venue may be proper with respect to an improperly venued claim if

the claim is joined to a properly venued claim, and the claims arise out of a common nucleus of

operative fact.").  Defendants' motion selectively discusses a few, factually-distinguishable cases

rejecting application of the pendent venue doctrine, *see* Mot. at 12-15, but overlooks other

substantial authority that favors application of the doctrine in the circumstances present here.

> As a leading federal practice treatise explains with respect to the pendent venue doctrine:

> [M]any courts follow the rule that if venue is proper for the 'principal' or
> 'primary' claim, then venue is proper for any subsidiary claim that shares a
> common nucleus of operative fact with the primary claim.  In an influential
> opinion, the Court of Appeals for the District of Columbia [Circuit] provided a
> rationale for this rule when it reasoned that it is proper to exercise pendent venue
> over subsidiary claims whenever all the claims originate from a common nucleus
> of operative fact, because that test, 'in itself, embodies factors that bear upon
> judicial economy, convenience, and fairness,' which are the central concepts
> guiding venue restrictions in general.

Wright & Miller at § 3808 (internal citations omitted).  The D.C. Circuit decision referred to in

the treatise is *Beattie v. United States*, 756 F.2d 91 (D.C. Cir. 1984).  There, in discussing

pendent venue (as opposed to the other, "interrelated" theory supporting venue in this district,

*see id*. at 100), the court emphasized the same considerations that inform venue determinations

generally – "primarily," the convenience of litigants and witnesses, and of the court system.  *See*

*id.* at 103 (citation omitted); *see also Reuber v. United States*, 750 F.2d 1039, 1048 (D.C. Cir. 1984) ("Pendent venue, like pendent jurisdiction, aims to promote judicial economy as well as convenience and fairness to the parties.").

These principles have been applied in numerous cases, in this district and elsewhere. For example, the "primary claim" rationale for pendent venue was applied by this Court in *Laffey*, 321 F. Supp. 1041, quoted above, a decision the D.C. Circuit discussed approvingly in *Beattie*. The "primary claim" rationale also was applied in *Solow Building Co., LLC v. ATC Associates, Inc.*, 175 F. Supp. 2d 465 (E.D.N.Y. 2001), a case factually similar to this one. In *Solow*, contractors hired by a Manhattan office building tenant released asbestos into the building in the course of their work. Plaintiffs, the building owner and operator, sued the contractors pursuant to the citizen-suit provisions of the Clean Air Act ("CAA") and pursuant to the Declaratory Judgment Act, alleging violations of the CAA and seeking a declaration that the contractors must indemnify plaintiffs for any damages or penalties arising from the contractors' conduct. *See id.* at 468. Under the special venue provision applicable to plaintiffs' CAA claims, it was undisputed that venue was proper only in a different district, *see id.* at 469, but venue was proper in the forum court for the Declaratory Judgment Act claim. Concluding that the latter claim was "primary," the court exercised pendent venue over the CAA claim:

> Because plaintiffs' principal purpose in bringing this action is not
> to pursue a Clean Air Act claim for damages sustained by them,
> but rather to obtain indemnification in the even plaintiffs are sued,
> the claim for declaratory judgment is properly characterized as the
> 'primary' claim.

*Id.* at 470. Essentially the same thing could be said in the present case. EPNG's principal purpose here is not to pursue a RCRA claim for compensation, but rather to obtain legal protection for itself (comparable to indemnification) by establishing and enforcing the federal

government's responsibility to remediate the Properties under UMTRCA.  EPNG's UMTRCA

Claim is therefore its primary claim, and, similar to the result in *Solow*, the Court should exercise

pendent venue over EPNG's paragraph (a)(1) RCRA Claims for the convenience of the parties

and the court system.  *See also Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F. Supp. 2d 449,

464 (S.D.N.Y. 2000) ("[P]endent venue is permitted over patent claims where the [non-patent]

claim that is properly venued in the forum is a substantial or primary claim, and the exercise of

pendent venue [over the patent claim] would result in judicial efficiency, convenience to the

parties, and would avoid piecemeal litigation.").

　　　In arguing against pendent venue, Defendants first contend that where a case involves

claims subject to both general and special venue statutes, the pendent venue doctrine allows a

general-venue claim to be brought where venue is proper under the special-venue provision, but

"the converse is not true."  Mot. at 13 (quoting *Norkol/Fibercore, Inc. v. Gubb*, 279 F. Supp. 2d

993, 999 (E.D. Wis. 2003)).  Although that may be the rule in the Eastern District of Wisconsin,

it is not the rule in this district, as *Laffey* shows, or elsewhere, as shown by *Solow*, *Hsin Ten

Enterprise* and the treatise material quoted above.  Indeed, the pendent venue doctrine generally

will not be needed to bring a general-venue claim in the district where a special-venue claim is

filed.  Since by definition venue options are broader under general venue statutes, a general-

venue claim – regardless of the pendent venue doctrine – will often be able to be brought in the

district mandated by a special-venue statute for another claim in the same case.  Pendent venue is

most needed and generally applied not in that circumstance, but in the converse situation present

here, where a plaintiff seeks to bring a special-venue claim in the district where venue is proper

for another claim under a general-venue statute.

Defendants also argue that in three decisions from this Court declining to exercise pendent venue, the Court concluded it would not be appropriate to circumvent congressional intent as expressed in a special venue statute. Mot. at 13-14. But that conclusion is properly viewed as the *result* of declining to apply the pendent venue doctrine, not a *reason* to reject the doctrine. The whole purpose of the pendent venue doctrine, and indeed its very existence, necessarily implies that there are cases in which venue may be found proper for a special-venue claim in a forum *other than* the one that Congress prescribed in the applicable special-venue statute. That is the essence of pendent venue. As explained above, the doctrine is generally not needed in order to bring a general-venue claim in a special-venue forum. None of the three decisions Defendants cite addresses whether venue was proper in this district for the "primary claim" in the case. Nor do any of those decisions address the significance of that inquiry to the pendent venue issue. However, the venue conclusions in all three cases can be explained – and distinguished from the present case – by the fact that in those cases venue for the primary claim involved was *not* proper in this district. Rather, venue for the primary claim was subject to a special-venue statute laying venue in a different district. Accordingly, application of the pendent venue doctrine was properly declined in those cases. *See, e.g., Boggs v. United States*, 987 F. Supp. 11 (D.D.C. 1997), cited in Mot. at 13 (rejecting claim of pendent venue over FTCA claim subject to special-venue provision based only on properly-venued, but clearly secondary FOIA claim that merely sought documents concerning the incident underlying the FTCA claim).

Defendants next argue that EPNG's characterization of its UMTRCA Claim as "primary" is "self-serving." *See* Mot. at 15. This argument is telling, because it implicitly recognizes that that characterization does serve EPNG well in the Court's evaluation of whether to apply the pendent venue doctrine. More importantly – and also telling – Defendants do not dispute

22

EPNG's characterization of the UMTRCA Claim as primary, and for reasons discussed above Defendants could not legitimately dispute that characterization.

Finally, Defendants' motion notes that a number of Defendants are only subject to the RCRA Claims and that any discovery or trial will address only the RCRA Claims.  *See* Mot. at 15.  First, the latter assertion is not true, and certainly cannot be accepted in resolving Defendants' motion.  In "discovery" under the Freedom of Information Act, and informally on the internet and in other public places, EPNG has already obtained materials that have significant bearing on its UMTRCA Claim.  Moreover, the Supreme Court and D.C. Circuit have made clear that discovery is appropriate in an APA case where the administrative record is too thin to permit "effective judicial review"  *See, e.g. In Re Cheney,* 334 F.3d 1096, 1103 (D.C. Cir. 2003) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971)); *Kartseva v. Dep't of State,* 37 F.3d 1524, 1530 n.21 (D.C. Cir. 1994).  In any event, these assertions by Defendants do not detract from the overall convenience to all parties of adjudicating this entire controversy in this district, where all defendants "reside," particularly considering that resolution of EPNG's primary UMTRCA Claim, which is properly brought here, may resolve the entire controversy.

### D. **Defendants Failed To Establish That Change Of Venue To Arizona Is Warranted**

Lastly, defendants proffer that this action should be transferred to the District of Arizona pursuant to either 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a).  *See* Mot. at 1.  Section 1406, however, only applies where venue is improper.  *See Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964); *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 878 (3d Cir. 1995); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Frasch*, 751 F. Supp. 1075, 1078 (S.D.N.Y. 1990).  Where, as here,

venue in the District of Columbia is proper, a motion to transfer venue under 28 U.S.C. § 1406(a) must be denied.

Defendants' motion to transfer pursuant to section 1404(a), which authorizes transfer "[f]or the convenience of the parties and witnesses, in the interest of justice," is also without merit. When a party seeks to transfer venue pursuant to that section, it bears a "heavy burden" of demonstrating that the plaintiff's choice of forum should be disturbed. *Thayer/Patricof,* 196 F. Supp. 2d 21 at 31 (denying motion to transfer venue); *see also Armco Steel Co. v. CSX Corp.,* 790 F. Supp. 311, 323 (D.D.C. 1991); *Int'l Brotherhood of Painters & Allied Trades Union v. Best Painting Sandblashing Co. Inc.,* 621 F. Supp. 906, 907 (D.D.C. 1985). Courts, including this one, have repeatedly held that a plaintiff's choice of forum is of "paramount" concern and should not be disturbed unless other factors weigh heavily in favor of transfer. *See, e.g., Airline Pilots Ass'n v. Eastern Air Lines,* 672 F. Supp. 525, 526 (D.D.C. 1987) ("Plaintiff's choice of forum is given paramount consideration"); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970), *cert, denied,* 401 U.S. 910 (1971) ("a plaintiff's choice of a proper forum is a paramount consideration").

Indeed, "where, as here, the plaintiff elects to sue the defendant in the latter's district of residence, his choice should be disturbed only upon a strong showing that it is required by the balance of convenience." *Daquila v. Schlosberg,* 253 F.2d 888, 889 (D.C. Cir. 1957); *see Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *see also Adams v Bell*, 711 F.2d 161, 192 (D.C. Cir. 1983) (*en banc*) (Wright, C.J., dissenting) ("Historically, the venue laws have given plaintiffs, within certain prescribed limits, the choice among convenient forums, even if the forum ultimately chosen is markedly less preferable than some other forum. This

24

plaintiff orientation honors the time-accepted notion that plaintiffs should be masters of their own lawsuits.").

Defendants cite only two reasons for disturbing EPNG's choice of venue and transferring the case to Arizona. Neither has merit. First, Defendants contend that this case should be resolved in the district where endangerment to the environment is threatened. Mot. at 15-16. As explained above, however, potential endangerment arising from Defendants' conduct in Arizona is but once aspect of this case, and it is not even the most important aspect for purposes of assessing the propriety of venue in the District of Columbia. Defendants' attempt to make the location of endangerment determinative on their change of venue request, when it is not determinative on EPNG's initial choice of venue, would nullify EPNG's right under the explicit terms of RCRA section 6972(a) to select a venue option *other than* the location of endangerment. And endangerment has nothing to do with the propriety of venue in this district for EPNG's UMTRCA claim, which is clear and undisputed. Thus, to the extent Defendants suggest there is some "policy" requiring adjudication of this case near the endangerment in Arizona, Congress has already declared a different policy choice by allowing EPNG's UMTRCA and RCRA Claims to be brought in this district under the applicable venue statutes.

The focus of EPNG's UMTRCA claim, and significant components of EPNG's RCRA Claims, concern federal decision-making and other federal agency conduct, and failures to act, by agency officials in the District of Columbia. *See, e.g.,* 42 U.S.C. § 7912(a) (UMTRCA provision making DOE Secretary responsible for designating processing sites, including vicinity properties). Moreover, both UMTRCA and RCRA implement important federal policies and programs that have national significance. This Court has regularly found such factors determinative in denying motions to transfer venue away from this district. For example, in

*Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128-29 (D.D.C. 2001), the

court acknowledged that "some of the operative facts occurred in Montana," but nevertheless

refused to transfer venue, concluding that "because both of the plaintiffs' counts focus on

interpretation of federal statues, and because federal government officials in the District of

Columbia were involved in the decision to reissue the [disputed] grazing permit, this case has

some national significance and has a nexus to th[is district]."  Similarly, in *Wilderness Soc'y v.

Babbitt*, 104 F. Supp. 2d 10, 14 (D.D.C. 2000), the court found that although much of the impact

of the challenged federal action would occur in Alaska, the underlying agency action involved

meetings and decision-making by federal officials in the District of Columbia that demonstrated

a sufficient nexus with this district to warrant denial of a venue transfer motion.

      Endangerment in Arizona might be significant to the venue issue if EPNG's claims had

no nexus whatsoever to this district, or only a very attentuated nexus.  In that circumstance, case

law indicates that a plaintiff's choice of venue is entitled to less deference.  *See, e.g.*, *Oudes v.

Block*, 516 F.Supp. 13, 14 (D.D.C. 1981).  But where, as here, the plaintiff's claims do have a

substantial nexus to plaintiff's chosen venue, deference to plaintiff's choice is fully warranted.

*See Greater Yellowstone Coalition*, 180 F. Fupp. 2d at 128 ("Most critical . . . is whether the

nexus between the operative facts and parties to the District of Columbia is sufficient to warrant

the court giving deference to plaintiff's choice of forum."); *Akiachak Native Community v. Dep't

of Interior*, No. 06-969, 2007 WL 2367754, at *2 (D.D.C. Aug.21, 2007) ("This case presents a

sufficiently substantial nexus to this district to warrant deference to [plaintiff]'s choice of

forum").  As explained above, at least a good part of Defendants' decision-making took place in

the District of Columbia.  Those decisions are at the very heart of EPNG's UMTRCA Claim and

some of its RCRA Claims.  There can be no question, therefore, that EPNG's claims have a

substantial nexus to the District of Columbia.

The decisions relied upon by Defendants to support the argument that this case is should

be resolved as a "localized controversy," *see* Mot. at 15, in Arizona, are not to the contrary.  In

those cases, plaintiffs' claims had little or no connection to the District of Columbia, and the

court for that reason declined to accord the usual deference to the plaintiff's choice of venue in

this district.  For example, in *Nat'l Wildlife Federation v. Harvey*, 437 F. Supp. 2d 42, 47

(D.D.C. 2006), cited in Mot. at 11-12, where the court granted a venue transfer motion, "the

[agency] decision-makers [were] located in Florida, not the District of Columbia, and the

disputed decisions were made in Florida."  The court therefore concluded that, "[g]iven the

District of Columbia's attenuated relationship to the case, Plaintiff's choice of forum will not be

given deference."  *Id.; see also Valley Comty. Pres. Comm'n v. Mineta,* 231 F. Supp. 2d 23, 45

(D.D.C. 2002), cited in Mot. at 16 ("[I]t appears that all the primary decision-makers and actors

in this matter reside in New Mexico.")

Notably, the four decisions relied upon by Defendants, which downplay or ignore the

need for deference to a plaintiff's choice of venue, were district court decisions.  *See* Mot. at 15-

16.  EPNG is aware of no binding authority from the D.C. Circuit that endorses such disregard of

the deference to a plaintiff's choice that is otherwise required.

Moreover, in the cases cited by Defendants, substantial other factors – absent or

materially different here – strongly favored transfer to a different venue.  *See, e.g., Deloach v.*

*Philip Morris Cos., Inc.* 132 F. Supp. 2d 22, 26-27 (D.D.C. 2000), cited in Mot. at 16

(convenience of parties best served by transfer, because "[a] substantial percentage of both

named and unnamed plaintiffs are residents of North Carolina;" in addition, "purchasing and

processing of tobacco by Defendants," which was central to plaintiffs' claim of bid-rigging at tobacco auctions, "occurs almost exclusively in and around North Carolina"); *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency,* 939 F. Supp 1, 3 (D.D.C. 1996) ("The convenience of the parties and witnesses strongly favors transfer to the District of the Virgin Islands.  Every one of the Plaintiffs, and Plaintiffs' lead counsel in this matter, lives on St. Thomas").  *See also Greater Yellowstone Coalition,* 180 F.Supp. 2d at 129 (denying transfer motion, and distinguishing *Trout Unlimited  v. U.S. Dep't of Agric.*, 944 F. Supp. 13 (D.D.C. 1996), because "th[at] case involved a very localized conflict with little national significance and the District of Colorado was more familiar with the governing state law.").

At bottom, Defendants' suggestion that endangerment in Arizona requires transfer to Arizona is contrary to the permissible reasons for transfer set forth in section 1404(a).  That statute authorizes transfer *only* "[f]or the convenience of parties and witnesses, in the interest of justice."  Absent some nexus between endangerment in Arizona and convenience to parties and witnesses – and Defendants do not articulate any such nexus – endangerment *per se* is irrelevant to the transfer issue.

Virtually acknowledging the latter point, Defendants contend, as the only other reason for transferring venue, that the convenience of witnesses favors transfer to Arizona.  *See* Mot. at 16-17.  Defendants' basis for that assertion – that "the vast majority of individuals who may have witnessed or participated in Federal Defendants' alleged actions handling waste in Arizona likely reside in or near Arizona and outside this Court's 100-mile subpoena range," Mot. at 16 – is wholly without merit as demonstrated by Defendants' failure to identify a single witness located in Arizona.  Such a blanket assertion of inconvenience of unidentified witnesses is given no weight in the balance of interest analysis.  *Motorola, Inc. v. PC-Tel*, 58 F. Supp. 2d 349, 359 (D.

Del. 1999) ("[g]iven the lack of specificity with which these individuals are identified and the [total] absence of 'adequate information with respect to the content and materiality of their testimony,' the court affords them no weight in its balancing tests.") (citation omitted).

Rather, to support its request for transfer, "a moving party must demonstrate (through affidavits or otherwise) what a non-resident witness will testify to, the importance of the testimony to the issues in the case, and whether that witness is willing to travel to a foreign jurisdiction."  *Thayer*, 196 F. Supp. 2d at 33.  *See also, e.g., First Health Group Corp. v. Sanderson Farms, Inc.,* No. 99 C 2926, 2000 WL 139474 at *2-3 (N.D. Ill. 2000) (collecting cases) (party must specifically identify witnesses and general content of proposed testimony); *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.,* No. 83-3347, 1984 WL 3656 at *2 (D.D.C. 1984) (transfer motion denied where insufficient showing of what testimony will cover or how it is relevant); *Helsel v. Tishman Realty & Constr. Co., Inc.*, 198 F. Supp. 2d 710, 712 (D.Md. 2002) (holding the party seeking transfer is required to submit evidence detailing why and to what extent the witnesses […] will be inconvenienced in the district where the case was brought)*; SEC v. Hart*, No. 78-65, 1978 WL 1091, *1 (D.D.C. 1978) (denying transfer where "defendant's description of his witnesses and their testimony is inadequate to sustain his burden concerning convenience to the parties and the witnesses"); *Green v. Footlocker Retail, Inc.,* No. 04-1875, 2005 WL 1330686 at *2  (D.D.C. June 3, 2005) (quoting *Wilderness Soc'y*, 104 F. Supp. 2d at 15 ("convenience of witnesses is considered only to the extent that the witnesses 'may actually be unavailable for trial in one of the fora.'").

Here, Defendants have utterly failed to identify anticipated witnesses, provide information explaining why their testimony would be material or even useful, or demonstrate whether or not its witnesses are willing to travel to the District of Columbia to testify.  Their

speculative assertion is just that – pure speculation.  In contrast, Defendants ignore the interests

of the most essential witnesses in this action, the government officials from its numerous

agencies located in or near the District of Columbia.

Ultimately, it is of little, if any, significance that the Properties are located in Arizona.

The Mill was closed in 1968 – almost 40 years ago – making it unlikely that witnesses or

documents are still in Arizona.  Indeed, although DOE has a field office responsible for Tuba

City remediation, it is located in *Colorado*, not Arizona.

Other factors, ignored by Defendants in their motion, also weigh in favor of litigating this

action in the District of Columbia.  For instance, Defendants certainly have not demonstrated any

hardship to the parties by hearing this case in the District of Columbia.  *See Helsel*, 198 F. Supp.

2d at 712 (defendant seeking alternative venue is required to submit evidence detailing why and

to what extent the parties will be inconvenienced in the district where the case was brought)

(citations omitted).  Nor could they.  It is indisputable that most or all Defendants reside in the

District of Columbia.  Similarly, EPNG, though it is headquartered in Colorado, has offices in

the District of Columbia.  EPNG's counsel is in this district as well, as are the offices of the

Justice Department division representing the government.

In addition, much of the documentary evidence from the governmental agencies is

located in the District of Columbia.  In fact, when Plaintiff sent FOIA requests to each

governmental agency Defendant, all but one of the responses originated from outside Arizona,

and a majority came from the District of Columbia.  Furthermore, a majority of the documents

produced pursuant to FOIA have been identified as coming from locations outside of Arizona.

Thus, this action can be adjudicated more expeditiously and inexpensively in the District

of Columbia because the Court here is closer to the Defendants, the government witnesses, the

documents and the attorneys than the district court in Arizona.  Because the balance of interests strongly weighs in favor of remaining in this district, and because EPNG's appropriate choice of this district is entitled to substantial deference, the Defendants' alternative motion to transfer should be denied.

### V.    CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss For Improper Venue, Or, In the Alternative, to Transfer.  Contrary to the Defendants' position, Plaintiff's claims are properly venued in the District of Columbia and the balance of relevant interests as well as the convenience of the parties dictate that this action remain in this Court. Given the dispositive nature of this motion and the complexity of the issues, pursuant to Local Rule 7(f), EPNG respectfully requests that the Court conduct an oral hearing on the motion.  A proposed Order is attached.

Dated this 12th day of September 2007.

Respectfully submitted,

_____s/_____
Jerry Stouck, D.C. Bar No. 343400
Robert L. Shapiro, D.C. Bar No. 415854
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, N.W., #500
Washington, DC  20006
202.331.3100

Thomas L. Sansonetti, D.C. Bar No. 949610
HOLLAND & HART, LLP
2515 Warren Avenue, Suite 450
Cheyenne, Wyoming  82001
307.778.4200

31

William G. Myers III, D.C. Bar No. 408573
HOLLAND & HART, LLP
U.S. Bank Plaza
101 S. Capitol Boulevard, Suite 1400
Boise, Idaho  83702
208.342.5000

David G. Palmer
Brian L. Duffy
Naomi G. Beer, D.C. Bar No. 450875
Christopher J. Neumann, D.C. Bar No. CO0044
GREENBERG TRAURIG, LLP
The Tabor Center
1200 Seventeenth Street
Twenty-Fourth Floor
Denver, Colorado  80202
303.572.6500

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **EL PASO NATURAL GAS COMPANY**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 07-00905  RJL |
| | § | |
| **UNITED STATES OF AMERICA**, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |

**[proposed] ORDER**

Upon consideration of the Defendants' Motion to Dismiss for Improper Venue,

Or, In the Alternative, to Transfer and Plaintiff's Memorandum in Opposition thereto, it

is hereby ORDERED that Defendants' Motion is DENIED.

Dated: _____


_____
Richard J. Leon
United States District Judge