IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EL PASO NATURAL GAS COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) Civ. Action No. 07-cv-00905 (RJL) |
| UNITED STATES OF AMERICA, et al., | ) |
| Defendants. | ) |

**UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS FOR IMPROPER VENUE,
OR, IN THE ALTERNATIVE, TO TRANSFER**

Plaintiff El Paso Natural Gas Company ("EPNG") seeks to compel a federal cleanup of certain sites in Arizona that allegedly pose an endangerment to public health and the environment. To this end, EPNG has brought multiple claims against federal defendants under the citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a). These RCRA claims must be brought in the United States District Court for the District of Arizona, both because the alleged endangerment to public health exists solely in Arizona and because the alleged waste handling activity occurred solely in Arizona.

EPNG's RCRA claims cannot be entertained by this Court as pendent claims to EPNG's Administrative Procedure Act ("APA") claim. First, it would be inappropriate to apply the pendent venue doctrine to override Congress' express direction in RCRA's special venue provision. Second, EPNG's RCRA and APA claims involve wholly different operative facts and proof. Third, application of the pendent venue doctrine would not promote judicial economy because there already exists a forum in which all of EPNG's claims are properly venued –

namely, the United States District Court for the District of Arizona.

Furthermore, even if this were a proper venue, it would still be in the interest of justice for the case to be transferred to Arizona pursuant to this Court's authority under 28 U.S.C. § 1404(a). The alleged endangerment to public health and the environment exists solely in Arizona and thus, persons residing in Arizona have a much greater interest in the resolution of this case than residents of the District of Columbia.

## DISCUSSION

**I.    EPNG'S RCRA CLAIMS HAVE BEEN BROUGHT IN AN IMPROPER VENUE**

In its Amended Complaint, EPNG brings three separate causes of action under RCRA, including: (1) claims under 42 U.S.C. § 6972(a)(1)(A) alleging federal defendants have committed RCRA violations, (2) claims brought under 42 U.S.C. § 6972(a)(1)(B) alleging federal defendants have contributed to an endangerment to health or the environment, and (3) a claim brought under 42 U.S.C. § 6972(a)(2) alleging defendant United States Environmental Protection Agency failed to perform a nondiscretionary duty to inspect waste disposal facilities. EPNG's "violation" claims under 42 U.S.C. § 6972(a)(1)(A) and EPNG's "endangerment" claims under 42 U.S.C. § 6972(a)(1)(B) have been brought in an improper venue.

    **A.    EPNG's RCRA Endangerment Claims Under 42 U.S.C. § 6972(a)(1)(B) Have Been Brought in an Improper Venue**

In its claims under 42 U.S.C. § 6972(a)(1)(B), EPNG alleges that Federal Defendants have contributed to, or are contributing to, the past or present handling, storage, treatment, transportation, or disposal of solid or hazardous waste at areas in or near Tuba City, Arizona, which may present an imminent or substantial endangerment to health or the environment. Am.

Compl. ¶ 110. In its opposition, EPNG does not dispute that the alleged endangerment to health or the environment exists solely in Arizona.

Despite the conceded absence of any endangerment in the District of Columbia, EPNG argues that the District of Columbia is an appropriate venue for subsection (a)(1)(B) endangerment claims because EPNG has brought separate "violation" claims under subsection (a)(1)(A), and because EPNG is contending that at least some of such violations occurred in the District of Columbia. *See* Opp'n. at 13. But this argument inappropriately attempts to conflate the venue analysis for subsection (a)(1)(A) and subsection (a)(1)(B) claims. Subsection (a)(1)(A) claims and (a)(1)(B) claims are separate causes of action, and therefore, venue must be independently established for both. *See Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006).

The venue provision at 42 U.S.C. § 6972(a)(2) provides that "Any action under paragraph (a)(1) of this subsection shall be brought in the district court for the district in which the alleged violation occurred or the alleged endangerment may occur." This provision must be read bearing in mind that actions under paragraph (a)(1) include two separate causes of action: violation claims under subsection (a)(1)(A) and endangerment claims under subsection (a)(1)(B). In view of the two different causes of action, the venue provision logically means that where a subsection (a)(1)(A) violations claim is brought, the proper venue is the district in which the alleged violation occurred, and where a subsection (a)(1)(B) endangerment claim is brought, the proper venue is the district in which the alleged endangerment may occur. In other words, the use of the disjunctive word "or" in 42 U.S.C. § 6972(a)(2) simply reflects the distinction between subsection (a)(1)(A) and subsection (a)(1)(B) claims and clarifies that the test for venue is

"where alleged violations occurred" in the case of a subsection (a)(1)(A) claim, or "where the alleged endangerment may occur" in the case of a subsection (a)(1)(B) claim.

EPNG fails to cite to a single case supporting its proposed statutory interpretation. EPNG discusses at length the case of *Town of Warwick v. New Jersey Dep't of Envtl. Protection*, 647 F. Supp. 1322 (S.D.N.Y. 1986) (*see* Opp'n. at 14-15), but this case confirms that endangerment claims must be brought in a venue where an endangerment may occur. In *Town of Warwick*, the district court found that an alleged endangerment existed in New York, which is where the case had been brought. 647 F. Supp. at 1324. Accordingly, the *Town of Warwick* court properly found venue under 42 U.S.C § 6972(a)(2).

EPNG's discussion of citizen suit provisions in other statutes is also misplaced because these provisions are not analogous in relevant respects to the RCRA citizen suit provision. *See* Opp'n. at 13-14. None of the other statutes cited by EPNG creates a similar endangerment cause of action or limits venue for such a claim to where the endangerment may occur.

In short, because EPNG concedes no endangerment exists in the District of Columbia, its subsection (a)(1)(B) claims have been brought in an improper venue.

**B.    EPNG's RCRA Violation Claims Under 42 U.S.C. § 6972(a)(1)(A) Have Been Brought in an Improper Venue**

This Court is also an improper venue for EPNG's subsection (a)(1)(A) claims alleging that Federal Defendants violated various RCRA regulations. The RCRA violations alleged by EPNG are set forth in paragraphs 11, 77, 80, 81, and 105-108 of the Amended Complaint. The alleged violations all turn on Federal Defendants' alleged conduct handling waste at locations in Arizona. *Cf. EPA ex rel. McKeown v. Port Authority of New York and New Jersey*, 162 F. Supp.

4

2d 173, 186 (S.D.N.Y. 2001) (dismissing some RCRA subsection (a)(1)(A) violation claims for improper venue where management of waste occurred in other jurisdictions), *aff'd sub nom. McKeown v. Delaware Bridge Auth.*, 23 Fed. Appx 81 2d Cir. 2001).  For example, EPNG alleges that federal defendants owned or operated hazardous waste facilities in Arizona without a permit required by section 3005(a) of RCRA, 42 U.S.C. § 6925(a).  *See* Am. Compl. ¶¶ 11, 77.  The alleged violation of owning or operating a hazardous waste facility in Arizona without a permit is an alleged violation occurring in Arizona.  Therefore, EPNG's claims alleging such a violation must be brought in Arizona.

EPNG contends vaguely that because some Federal Defendants are headquartered in the District of Columbia, some "decision-making" occurred in the District of Columbia that violated some RCRA requirements.  *See* Opp'n. at 16.  But EPNG's Amended Complaint does not identify any specific decisions made by Federal Defendants in the District of Columbia that in and of themselves violated RCRA requirements.  Whatever decisions may have been allegedly made in the District of Columbia regarding waste handling in Arizona, the RCRA violations arising from waste handling in Arizona are violations occurring in Arizona.[1/]

EPNG cites to *NRDC v. Southwest Marine, Inc.*, 945 F. Supp. 1330, 1333 (S.D. Cal. 1996), *aff'd* 236 F.3d 985 (9th Cir. 2000) to support the proposition that "decision-making violations can occur in a place other than where [a] waste facility is located."  Opp'n. at 16.  But

---

[1/]  EPNG's also neglects to point out that not all Federal Defendants are headquartered in Washington, D.C.  The Department of Defense ("DOD") is headquartered at the Pentagon in Virginia.  The Nuclear Regulatory Commission and the Indian Health Service are both headquartered in Rockville, Maryland.  Thus, even to the extent these agencies can be said to have made decisions at their headquarters that violated RCRA, such violations would have occurred outside of this judicial district.

5

this case fails to provide any support for this proposition, or for EPNG's venue argument generally. In *Southwest Marine*, a Clean Water Act case, the United States District Court for the Southern District of California addressed allegations that the defendant had failed to prepare several environmental compliance plans required by that Act. The court found that a pre-suit notice letter adequately described the location of the alleged violations as the defendant's corporate headquarters because the relevant industrial waste facility, for which plans were required, was located at the headquarters location described in the notice. 945 F. Supp. at 1333. In so reasoning, the court in *Southwest Marine* made clear that it believed the violations at issue had occurred precisely where the waste facility was located. *Wirtz v. Cascade Employer's Ass'n, Inc.*, 219 F. Supp. 84 (D.D.C. 1963), cited by EPNG, also does not support EPNG's position. *Wirtz* addresses a very different venue provision in the Labor-Management Reporting and Disclosure Act and violations of environmental regulations relating to waste management were not at issue.[2]

EPNG further concedes that it failed to provide pre-suit notice of violations to the District of Columbia, as required by 42 U.S.C. § 6972(b) for violations alleged to have occurred in the District. *See* Opp'n. at 16, n.3. Instead, EPNG solely provided pre-suit notice to the State of Arizona. This confirms that EPNG itself concluded prior to filing suit that the violations at issue occurred in Arizona.

---

[2] Likewise, EPNG's reliance on two RCRA cases in which the issue of venue was not even raised or addressed by the court is misplaced. *See* Opp'n. at 17-18 (citing *New Mexico v. Watkins*, 783 F. Supp. 633, 635 (D.D.C. 1992) and *Basel Action Network v. Maritime Admin.*, 370 F. Supp. 2d 57 (D.D.C. 2005), *aff'd in part, re'vd in part,* 969 F.2d 1122 (D.C. Cir. 1992). Neither decision examined the issue before this Court or opined on the propriety of venue under 42 U.S.C. § 6972(a).

In short, EPNG's subsection (a)(1)(A) violation claims have been brought in an improper venue because the alleged violations occurred in Arizona.

## II.     THE DOCTRINE OF PENDENT VENUE IS NOT APPLICABLE

The doctrine of pendent venue does not apply to the facts of this case, and EPNG's RCRA claims cannot be entertained by this Court as pendent claims to EPNG's APA claim.

As an initial matter, as discussed in the United States' opening brief, this Court has in prior cases refused to apply the doctrine of pendent venue to override Congress' direction in a special venue statute. *See, e.g., Jyachosky v. Winter*, No. Civ. A. 04-01733, 2006 WL 1805607, at *4 & n.3 (D.D.C. June 29, 2006); *Bartel v. FAA*, 617 F. Supp. 190, 197-98 & n.33 (D.D.C. 1985). EPNG points to *Laffey v. Northwest Airlines, Inc.*, 321 F. Supp. 1041 (D.D.C. 1971) (*see* Opp'n. at 6), in which the Court elected not to decide whether venue was proper for a Civil Rights Act claim, after concluding that the plaintiff's Equal Pay Act claim was the "principal cause" of action, and that the proofs as to the Equal Pay Act claim and the Civil Rights Act claim would be similar. In this regard, the approach in *Laffey* is inconsistent with this Court's unequivocal statements in *Jyachosky* and *Bartel* that Congress' express direction in a special venue statute must be heeded. In *Jyachosky*, this Court explained that it would be improper to exercise pendent jurisdiction to override Congress' direction in a special venue statute because "[w]here . . . Congress has clearly limited the scope of venue, the court *is compelled* to abide by such restrictions." 2006 WL 1805607, at *4 & n.3 (emphasis added). Similarly, in *Bartel*, this Court explained that where a claim is governed by a special venue statute, "this Court *lacks the authority* to ignore the congressional intent to limit venue by finding pendent venue." 617 F. Supp. at 198 n. 33 (emphasis added).

In any event, even if this Court interprets the pendent venue doctrine to provide the Court with residual discretion to ignore in some instances the explicit direction of Congress set forth in a special venue statute, application of the pendent venue doctrine still would be inappropriate under the circumstances here. The rationale for application of the pendent venue doctrine is that it may be more efficient for one court to adjudicate all claims involving substantially the same operative facts and proofs. *See Boggs v. United States*, 987 F. Supp. 11, 17 (D.D.C. 1997).

EPNG's APA claim challenges a purported Department of Energy ("DOE") action refusing to designate certain properties in Tuba City, Arizona, as "vicinity properties" under the Uranium Mill Tailings Radiation Control Act ("UMTRCA"). This APA claim, if it is reviewable at all,[3] would be reviewed based upon an administrative record. *See Simpkins v. Shalala*, 999 F. Supp. 106, 110 (D.D.C. 1998) (judicial review of administrative action under the APA is limited to the record before agency at the time of decision). The court would apply a highly deferential standard of review and uphold the action if any rational basis for it were presented applying the standards set forth in UMTRCA. *See Environmental Defense Fund v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981) (explaining "arbitrary and capricious" standard mandates judicial affirmance if a rational basis for agency decision is presented).

EPNG's RCRA claims involve entirely different operative facts and proof than EPNG's APA claim. EPNG's RCRA claims concern the alleged handling and disposal, over a period of decades, by Federal Defendants of various hazardous and solid wastes *other* than radioactive materials regulated under UMTRCA. Specifically, EPNG alleges (*see* Opp'n. at 5) that the waste

---

[3] EPNG's APA claim is not viable because, among other things, vicinity property designations made by DOE under UMTRCA are not subject to judicial review, 42 U.S.C. § 7912(d), and because EPNG has not identified any final DOE action under UMTRCA.

8

that is the subject of its APA/UMTRCA claim is residual radioactive material from a former uranium mill which constitutes a "byproduct" material subject to the Atomic Energy Act of 1954 as amended, 42 U.S.C. § 6003(27), and that is therefore expressly carved out from regulation under RCRA. In contrast, the waste that is the subject of EPNG's RCRA claims is not residual radioactive material. *See* Am. Compl. ¶ 97.[4/] Thus, the APA and RCRA claims involve entirely different factual allegations and proofs. Moreover, EPNG's RCRA citizen suit claims, unlike EPNG's APA claim, would not be reviewed based upon an administrative record, and would presumptively require discovery and trial.

Furthermore, application of the pendent venue doctrine will not promote judicial economy. There already exists a forum available in which venue would be indisputably proper over all of the claims raised in the Complaint. Specifically, EPNG can bring all of the claims set forth in its Complaint in the United States District Court for the District of Arizona. Thus, it is not any more efficient for EPNG's claims to be heard in this court than it would be for all of EPNG's claims to be heard in a proper venue.[5/]

Moreover, EPNG's characterization of its APA claim as its "primary claim" (*see* Opp'n. at 1) and its RCRA claims as "secondary claims" does not withstand scrutiny, and there is no basis for applying pendent venue on the theory that the APA claim is the "primary claim." In the

---

[4/] For example, EPNG alleges in its RCRA claim that the Department of Health and Human Services or the Indian Health Service has disposed of medical waste in violation of RCRA requirements. *See* Am. Compl. ¶ 81. Such alleged disposal of medical waste has no relevance whatsoever to EPNG's APA claim, which is focused on residual radioactive material.

[5/] In this regard, this case is distinguishable from *Beattie v. United States*, 756 F.2d 91 (D.C. Cir. 1984), cited by EPNG (*see* Opp'n. at 20). In *Beattie*, the court applied pendent venue because otherwise there would have been a "venue gap" in which the plaintiffs' claims could not be heard anywhere. 756 F.2d at 104. That is not the case here.

first place, the RCRA claims are the *only* claims, and therefore necessarily the primary claims, asserted against many of the defendants in this lawsuit. For example, no APA claim is brought against Defendants Department of the Interior, Department of Health and Human Services, and Department of Defense. Moreover, to the extent any claims in this suit can be regarded as "primary" claims from a substantive perspective, it is the RCRA claims. Plaintiff's APA claim challenges a single alleged agency decision. In contrast, the RCRA claims encompass alleged violations of a multitude of RCRA requirements. The RCRA claims are also more substantial in scope from a case management perspective, inasmuch as resolution of the RCRA claims would presumptively require discovery and trial, whereas the APA claim would be reviewed upon an administrative record.

Furthermore, contrary to EPNG's suggestion (*see* Opp'n. at 4-5), the RCRA claims are not pled in the alternative to the APA claim. EPNG seeks specific relief in connection with its APA claim, and specific different relief in connection with its RCRA claims. *See* Am. Compl., Prayer for Relief. EPNG's assertion that resolution of the APA claim would "entirely resolve the matter" and moot its RCRA claims is not correct. *See* Opp'n. at 2. If the sites at issue contain both radioactive wastes and non-radioactive wastes, as EPNG alleges, then remediation of radioactive materials under UMTRCA would not necessarily address non-radioactive wastes that allegedly pose an endangerment to public health.

For these reasons, application of the pendent venue doctrine would be inappropriate.

### III.   TRANSFER OF THIS CASE PURSUANT TO 28 U.S.C. § 1404 WOULD BE APPROPRIATE EVEN IF THIS COURT WERE DEEMED A PROPER VENUE

Even if this Court were a proper venue – and it is not – transfer of this case to the District

of Arizona is still "in the interest of justice" pursuant to 28 U.S.C. § 1404. While the courts must weigh a number of private and public interest factors in evaluating transfer pursuant to 28 U.S.C. § 1404, the most important factor here is Arizona's strong localized interest in this dispute. Fundamentally, this case centers on allegations that waste disposal occurred over a period of decades at specified sites in Arizona that has created an endangerment to public health. The alleged endangerment directly affects residents of Arizona, including members of the Navajo and Hopi Tribes. It is in the interest of justice for the case to be heard in the judicial district where the disposal activity allegedly occurred and where persons affected by the alleged endangerment reside. This case constitutes a "far greater matter of . . . public concern" to members of the Navajo and Hopi Tribes and other persons in Arizona than to persons in the District of Columbia. *See Environmental Defense v. U.S. Dep't of Transp.*, Civ. No. 06-2176, 2997 WL 1490478, at * 4 (May 18, 2007) (transferring challenge to federal approval of Maryland highway project from the District of Columbia to Maryland). As the Supreme Court has stated:

> In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). *See also Hawksbill Sea Turtle v. FEMA*, 939 F. Supp. 1, 3, n.5 (D.D.C. 1996) (noting importance of allowing local citizens to attend and observe proceedings in case).

The crux of EPNG's opposition to transfer under 28 U.S.C. § 1404 is the argument that its choice of forum should be the "paramount" factor considered. *See* Opp'n. at 24. However, a plaintiff's choice of forum is not accorded great deference by a court where, as here, a plaintiff's choice of forum is not the plaintiff's home forum. *Shawnee Tribe v. United States*, 298 F. Supp.

2d 21, 24 (D.D.C. 2002). EPNG is a Delaware corporation whose principal place of business is in Colorado Springs, Colorado. Am. Compl. ¶ 18. Furthermore, a plaintiff's choice of forum is entitled to even less deference where "'there is an insubstantial factual nexus with the plaintiff's choice.'" *Hawksbill Sea Turtle*, 939 F. Supp. at 3 (citation omitted). *See also Airport Working Group of Orange County, Inc. v. U.S. Dep't. of Defense*, 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (transferring case against federal agency and holding Court must be "especially cautious" in allowing cases to remain in District of Columbia where case lacks any meaningful ties to District of Columbia), citing *Trout Unlimited v. U.S. Dep't. of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996).

Contrary to EPNG's suggestion (*see* Opp'n. at 25-27), this case does not have any meaningful ties to the District of Columbia. EPNG's APA claim is centered on challenging an agency determination allegedly embodied in an April 22, 2004, letter from Donna Bergman-Tabbert, Director of Land & Site Management, Dep't of Energy, to Mr. Joe Shirley, President of the Navajo Nation. *See* Am. Comp. ¶¶ 70, 73, 99. This letter reflects that Donna Bergman-Tabbert at the time was based in a DOE field office in Grand Junction, Colorado. *See* April 22, 2004, Letter from Donna Bergman-Tabbert to Mr. Joe Shirley (Attachment 1). Thus, the purported DOE action that EPNG seeks to challenge was not taken by a DOE official based in the District of Columbia. Moreover, the RCRA claims all address alleged waste handling activity in Arizona. In short, the case does not have nationwide significance.

As in the case of *Shawnee Tribe v. United States*, 298 F. Supp. 2d at 26, the only connection this lawsuit has to the District of Columbia is that some federal agencies are headquartered here. EPNG contends without providing any specific factual allegations that federal agency officials in the District of Columbia made some decisions related to handling of

waste in Arizona. Even if EPNG could point to any relevant decisionmaking in the District of Columbia, the focus of this case would still be on waste disposal or remediation activity in Tuba City, Arizona. Thus, the fact that any "decisions themselves occurred within the confines of the District of Columbia [would not be] sufficient to overcome the roots that this case" has in Arizona. *See Environmental Defense v. U.S. Dep't. of Transp.*, 2007 WL 1490478, at * 7.

As set forth in the United States' opening brief, the factor of convenience of witnesses supports transfer. EPNG disputes that it is likely that witnesses to waste disposal in Arizona are still in Arizona, because "the Mill was closed in 1968 – almost 40 years ago." *See* Opp'n. at 30. This point might make some sense if it were not completely inconsistent with the allegations that EPNG is making in its Amended Complaint. In its Amended Complaint, EPNG does not contend that relevant waste disposal activity ceased when the Mill was closed in 1968; rather, EPNG asserts in its RCRA claims that waste disposal activities occurred *beginning* in 1968 and are continuing through the present. Specifically, EPNG alleges:

> On information and belief, during the period 1968 through the present and following EPNG's reclamation of and departure from the Mill and other Properties, Defendants have periodically and continuously handled, managed, generated, treated, stored, disposed of, transported, or engaged in open dumping of the Mill Waste and other solid and hazardous waste.

Am. Comp. ¶ 80. Thus, accepting for purposes of a motion to dismiss the allegations in EPNG's Complaint (*i.e.,* that relevant waste disposal activity occurred between 1968 and the present), common sense dictates that any witnesses to such waste disposal activity are likely to still reside in Arizona. The Court does not need to rely upon an affidavit to conclude that witnesses to waste disposal activity are more likely to reside in proximity to where the activity allegedly occurred

than to reside more than 1,800 miles away.

EPNG contends that government officials in Washington would be "essential witnesses" in this case. Opp'n. at 30. However, EPNG does not specify any government officials in Washington as potential witnesses. Nor does EPNG specify what such officials would testify to and the relevance of any such testimony.

The factor of "convenience of the parties" does not present a valid reason for denying transfer. Plaintiff EPNG is headquartered in Colorado, which is much closer to Arizona than to Washington, D.C. *See* Opp'n. at 30. While two of the eight attorneys identified on EPNG's pleadings are located in Washington, D.C., the remaining six are located in Colorado, Wyoming and Idaho, all of which are closer to Arizona than to Washington, D.C. The fact that counsel for Defendants is located in the District of Columbia does not justify denying transfer because "'any inconvenience to [Defendant's counsel] is offset by the fact that they represent the party requesting the transfer.'" *National Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 48 (D.D.C. 2006) (citation omitted).

The factor of ease of access to documents also does not present a valid reason for denying transfer. First, the case law in this jurisdiction is clear that the location of documents does not weigh heavily in the venue analysis. *Environmental Defense v. U.S. Dep't of Transp.*, 2007 WL 1490478, at * 7; *Thayer/Patricof Educ. Funding, LLC v. Pryor Resources Inc.*, 196 F. Supp. 2d 21, 36 (D.D.C. 2002) ("[T]he location of documents, given modern technology, is less important in determining the convenience of the parties."). Second, there is no reason to conclude that more relevant documents are located here than in Arizona. EPNG asserts, without supplying an affidavit, that it has made certain Freedom of Information Act ("FOIA") requests to federal

defendants and that a majority of the documents produced pursuant to FOIA have been identified as coming from locations outside of Arizona. *See* Opp'n. at 30. However, even accepting EPNG's averments regarding FOIA requests it has made, these averments fall short of demonstrating that more relevant documents are in the District of Columbia than in Arizona.

Finally, EPNG's argument (*see* Opp'n. at 28) that public interest factors (*i.e.*, where the endangerment is located) should not be considered absent some nexus to two private interest factors (*i.e.* convenience of parties and witnesses) is made without any citation to precedent and lacks merit. It is well-settled that this Court is not limited to the three factors expressly enumerated in section 1404(a) in evaluating a motion to transfer. *See, e.g., DeLoach v. Philip Morris Cos.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000). In addition, this Court almost invariably considers public interest factors without regard to whether public interest factors have some "nexus" to convenience of parties and witnesses. *See*, *e.g.*, cases cited at page 15-16 of opening brief.

## CONCLUSION

WHEREFORE, pursuant to Fed. R. Civ. P. 12(b)(3), and for the reasons set forth in the United States' opening brief the case should be dismissed for improper venue. Alternatively, pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a), the case should be transferred to the United States District Court for the District of Arizona.

    Respectfully submitted,

    RONALD J. TENPAS
    Acting Assistant Attorney General
    Environment and Natural Resources
        Division
    U.S. Department of Justice

                                        /s/
                   ERIC G. HOSTETLER, Attorney
                   D.C. Bar No. 445917
                   Environmental Defense Section
                   P.O. Box 23986
                   L'Enfant Plaza Station
                   Washington, D.C.  20026-3986
                   (202) 305-2326

October 10, 2007

**ATTACHMENT 1**



U.S. Department of Energy
2597 B¾ Road
Grand Junction, CO 81503

APR 2 2 2004

- STEVE ETSITTY
- ARLENE LUTHER
- CASSANDRA BLOEPEL

RECEIVED
APR 28 2004
NAVAJO ENVIRONMENTAL
PROTECTION AGENCY

Mr. Joe Shirley, Jr., President
The Navajo Nation
P.O. Box 9000
Window Rock, AZ 86515

Subject: Tuba City Landfill

Reference: Your Letter Dated December 1, 2003, Alleging Illegal Dumping of Mixed Waste by Rare Metals Corporation of America, Tuba City, Arizona

Dear President Shirley:

The U.S. Department of Energy (DOE) would like to thank you for your letter dated December 1, 2003. We have discussed the situation with retired Atomic Energy Commission employees who routinely inspected the Tuba City mill and have researched information about this site. The DOE did not find any evidence that would support the allegations that Rare Metals Corporation disposed of contaminated equipment or uranium mill tailings at the Tuba City landfill. Rare Metals Corporation operated under a licensing agreement with the U.S. Nuclear Regulatory Commission and the State of Arizona, and contaminated equipment and residual radioactive materials were to be controlled in accordance with the licensing requirements.

The Uranium Mill Tailings Radiation Control Act (UMTRCA) was passed in 1978 and assigned DOE the responsibility for remediating residual radioactive material at 24 UMTRA Title I mill sites and surrounding properties. The Tuba City mill site was remediated under that program, and surrounding properties where residual radioactive materials were identified were cleaned up by the DOE. The Tuba City landfill was not identified as being a concern by the Navajo authorities actively working with the UMTRA program at that time; therefore, it was not surveyed nor considered for remediation. In 1998, Congress revoked the DOE's authority and responsibility for any further remediation of residual radioactive materials.

However, Congress did continue DOE's authority to remediate ground water at the 24 UMTRA Title I mill sites. DOE believes that the ground water contamination discussed in your letter is not from the former mill site but is from the Tuba City landfill or some other nearby source. Therefore, ground water at the Tuba City landfill would not qualify to be remediated under the existing UMTRA program.

Congress also directed DOE to keep the UMTRA Grand Junction, Colorado, disposal cell open to receive any UMTRCA materials that may be discovered after the UMTRA surface program was terminated. If you determine that the material in the landfill meets the definition of UMTRA materials allowed for disposal and you request us to do so, I will discuss with Mesa County officials and regulators whether the Grand Junction disposal cell can be made available

Mr. Joe Shirley                           -2-                              APR 2 3 2002

to the Navajo Nation for disposal of such materials that may be removed from the Tuba City landfill. All waste would need to meet existing disposal criteria. For example, in your letter, it was mentioned that some of the wastes are medical waste, which does not meet criteria and cannot be accepted at the repository.

The DOE is willing to meet with representatives of the Navajo Nation to discuss the current situation at the Tuba City landfill. However, in a letter dated June 19, 2001, and signed by Donald Sutherland, Acting Chief of the Environmental and Cultural Resources Management Division, the U.S. Department of Interior, Bureau of Indian Affairs (BIA), stated that the BIA intended to proceed with the closure of the Tuba City landfill under appropriate federal law. It appears to DOE that BIA has accepted responsibility for closure of the Tuba City landfill, and any such meeting should include the BIA.

If you have any questions concerning this matter, please contact Mr. Art Kleinrath of my staff at 970/248-6037 or give me a call at 970/248-6001.

                                   Sincerely,

                                   Donna Bergman-Tabbert
                                   Director, Land & Site Management

cc:
N. Honi, Hopi Tribe
W. Taylor, Hopi Tribal Chairman
R. Sakiestewa, Jr., Hopi Tribe
S. Etsitty, Navajo Nation EPA
M. Roanhorse, Navajo Nation
D. Sutherland, BIA
S. Grey, DOE-HQ
R. Bush, LM-50
M. Ghate, LM-5
C. Carpenter, Stoller
TUB200.02B (D. Roberts)

awk/Tuba City Landfill.doc