IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **EL PASO NATURAL GAS COMPANY**, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 07-00905  RJL |
| **UNITED STATES OF AMERICA**, et al., | § § § | |
| Defendants. | § § § § § | |

### EL PASO'S SUPPLEMENTAL BRIEF IN OPPOSITION
### TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE

Plaintiff El Paso Natural Gas Company ("EPNG") respectfully submits this supplemental brief pursuant to the Court's invitation at the November 28, 2007 hearing on Defendants' venue motion. EPNG addresses four points concerning government arguments and other issues raised at the hearing:

1. <u>Defendants' "construction" of the venue sentence in 42 USC § 6972 (a) would re-write the statute</u>.

The parties agree there is one sentence in 42 USC § 6972 (a) that is dispositive of the venue issue regarding the RCRA "(a)(1)" claims, and thus dispositive of the only venue defect asserted by Defendants. *See* Transcript of November 28, 2007 hearing ("Tr.") at 23 ("MR. HOSTETLER: . . . We agree that's the operative venue sentence."). Defendants argue that sentence should be read as if it were written as follows (emphasis added): "Any claim for a RCRA *violation* under paragraph (a)(1)(A) of this subsection shall be brought in the district court

for the district in which the alleged violation occurred, and any claim for RCRA *endangerment* under paragraph (a)(1)(B) shall be brought in the district court for the district in which the alleged endangerment may occur."

But that is not what the sentence says. It does not address RCRA violation claims separately from RCRA endangerment claims. Rather, the sentence reads: "*Any action* under paragraph (a)(1) of this subsection shall be brought in the district court for the district in which the alleged violation occurred *or* the alleged endangerment may occur" (emphases added). Defendants argue that EPNG's reading of this sentence, which focuses on the choice of venue conferred by the word "or," "conflat[es]" claims under paragraphs (a)(1)(A) and (a)(1)(B) "inappropriately." Tr. at 23. But as the plain text of the sentence in question demonstrates, it is *Congress* that has conflated the claims in those two paragraphs by providing in this one sentence a choice of venue for "[a]ny action under paragraph (a)(1)" – meaning any action involving claims under *either* paragraph (a)(1)(A) or paragraph (a)(1)(B). And this is just such an action.

Defendants' reading not only would re-write the sentence, but would lead to the untenable conclusion, in cases like this one alleging violations and endangerment in different districts, that the violation claim(s) must be brought where the violation(s) occur and the endangerment claim(s) must be brought where the endangerment may occur. Congress rejected that kind of inefficient piecemeal litigation by providing that venue is proper for any action under paragraph (a)(1) where the violation occurs "or" where the endangerment may occur. *See, e.g., In re Espy,* 80 F.3d 501, 505 (D.C. Cir. 1996) ("[A] statute written in the disjunctive is generally construed as 'setting out separate and distinct alternatives.'") (citation omitted).

Venue is therefore proper in this district because EPNG alleges RCRA violations in this district.

2. <u>There are alleged RCRA violations in this district</u>.

In response to the Court's question whether recordkeeping for the pertinent sites in Arizona should have been done by Washington-based government staff, *see* Tr. at 25, Defendants' counsel responded only that "a failure to maintain a record related to [a] facility is a violation occurring at the facility," *id* at 26.  That argument also reads the word "or" out of the venue sentence in § 6972 (a), a word that clearly reflects recognition by Congress that a RCRA violation can occur in a place *other than* where the RCRA endangerment may occur.  If RCRA violations always occurred at the same place as the alleged endangerment, as Defendants suggest, Congress need not have separately provided the option under § 6972(a) to allow venue in the district where the violation(s) occur.  But Congress did provide that option, because RCRA violations can occur elsewhere than endangerment.

Particularly because Defendants have no presence at the pertinent sites in Arizona – a fact Defendants have not disputed – EPNG's allegations that various recordkeeping and other RCRA violations have occurred and are occurring at the agency headquarters in this district are presumptively correct.  Apart from arguing that RCRA violations invariably occur at the pertinent facility, an argument belied by the disjunctive formulation of the venue sentence in § 6972 (a), Defendants have pointed to no place other than agency headquarters in this district where the alleged RCRA violations could possibly be occurring.  The fact that the Department of Energy ("DOE") letter that Defendants attached to their reply brief and mentioned at the November 28 hearing was sent from DOE's Grand Junction, Colorado office is unavailing.  That DOE letter relates solely to EPNG's UMTRCA claim, not its RCRA claims, because the letter records agency decision-making under UMTRCA.

Ultimately, EPNG's allegations that these RCRA violations are occurring in this district,

*see, e.g.,* Amended Complaint ¶ 11, must be accepted as true for purposes of the government's motion to dismiss. The D.C. Circuit made that quite clear, in a comparable context, in *Beattie v. United States*, 756 F.2d 91, 100 (D.C.Cir.1984); *see also* cases cited in EPNG's opposition to motion to dismiss or transfer for improper venue ("EPNG venue opposition brief"), at 9.

      3. <u>EPNG's UMTRCA claim and its RCRA claim do address the same waste</u>.

      Whether intentionally or not, both in Defendants' reply brief and at the November 28 hearing Defendants have simply misstated the nature of the waste addressed by EPNG's RCRA claim. *See* Defendants' reply brief at 9 ("[T]he waste that is the subject of EPNG's RCRA claims is not residual radioactive material."). EPNG's primary claim in this case is that the waste at the "Properties" identified in the Amended Complaint is residual radioactive waste from the Tuba City uranium ore processing mill that is, or should be, exclusively regulated and thus remediated under UMTRCA. EPNG's RCRA claims are brought in the alternative, only if and to the extent the Court finds that UMTRCA is inapplicable. Thus, EPNG's principal position under RCRA is that the waste in question is nuclear "byproduct" material that Congress, expecting such waste to be remediated under UMTRCA, expressly carved out from regulation under RCRA and other environmental statutes. *See* 42 USC § 6903 (27) ("The term 'solid waste' means any . . . discarded material . . . but does not include . . . byproduct material as defined by the Atomic Energy Act . . . ."). EPNG seeks a declaration from the Court that the waste in question is such "byproduct" material as defined by the Atomic Energy Act. *See* Amended Complaint, Prayer for Relief ¶ B; EPNG's opposition brief at 5. Only in the alternative, and only to the extent the waste is not "byproduct" material exclusively regulated under UMTRCA, does EPNG seek relief under RCRA. In that regard, EPNG has alleged (in the alternative) that some of the waste may be medical or other non-UMTRCA waste.

Nonetheless, to whatever extent the waste in question is not residual radioactive waste exclusively regulated by UMTRCA, if EPNG prevails on its UMTRCA claim and DOE remediates the Properties under that statute, DOE most likely, and as a practical matter, will remediate all waste at the Properties rather than segregating any non-UMTRCA waste that may be present and leaving that waste in place for later remediation. Moreover, even if DOE could and did segregate and ignore any non-UMTRCA waste, once DOE remediates the UMTRCA waste – or the Court declares such waste "byproduct" material exempt from RCRA – EPNG's interest in this case is at an end. EPNG's interest arises from the threat that it will be held liable for remediating the Properties. EPNG's potential liability will be non-existent, however, if DOE remediates the Properties under UMTRCA or if the waste in question is exempt from RCRA requirements. In either of those events, it is entirely reasonable to expect that EPNG will not pursue this litigation further, despite the contention at the November 28 hearing – unusual for a Defendant, but perhaps driven by the venue argument of the moment – that the litigation EPNG has chosen to initiate somehow *must* continue.

4. Transfer or dismissal of only EPNG's paragraph (a)(1) RCRA claims is unwarranted, unnecessary and would be inefficient.

There is no legitimate reason to sever, and then transfer or dismiss EPNG's paragraph (a)(1) RCRA claims. Venue is proper in this district for those claims, and even if it were not, the pendent venue doctrine provides the Court ample authority to adjudicate the paragraph (a)(1) RCRA claims together with EPNG's primary UMTRCA claims. *See* EPNG's opposition brief at 18-23 (discussing pendent venue). Notably, there is no dispute that EPNG's RCRA claims under paragraph (a)(2) of 42 USC § 6972 are properly venued in this district, and those RCRA claims therefore should not be severed and transferred or dismissed in any event.

Moreover, there are good reasons to retain all the RCRA claims as part of the same case in which EPNG's UMTRCA claims are being litigated. Given that EPNG's UMTRCA claims and RCRA claims involve the same Properties and substantially (if not entirely) the same residual radioactive waste, there are obvious efficiencies in litigating the claims in one case. Defendants admitted as much at the November 28 hearing: "I think it would be perhaps inefficient to bifurcate the case and have some claims out there and some here." Tr. at 11. And although later at the hearing Defendants suggested dismissing the RCRA claims from this suit, *see* Tr. at 27, doing so would impose the same inefficiencies as transferring those claims to Arizona.

As EPNG proposed in the parties' joint meet and confer statement filed October 10, 2007, the most efficient and appropriate way to proceed in this case is for the Court first to adjudicate EPNG's UMTRCA claim and then, if still necessary, to adjudicate EPNG's RCRA claims. *See* joint meet and confer statement at 3-4 (¶ 6), 5-6 (¶ 7). Proceeding in that manner will allow the parties and the Court to focus initially on EPNG's primary UMTRCA claim, while also facilitating any necessary discovery from all Defendants. At least some such discovery will be applicable to both the UMTRCA and RCRA claims (for example, discovery concerning the nature of the waste at the Properties), underscoring the efficiencies to be achieved by proceeding on both types of claims in the same case. *See United States v SCA Services of Indiana, Inc.,* 150 F.R.D. 141 (N.D. Ind. 1993) (denying severance of government as a party because severance would frustrate discovery against the government, particularly in view of agency regulations that essentially prohibit third-party discovery against federal agencies absent agency consent); *see also Tillis v. Cameron,* 2007 WL 2806770 (M.D. Ala. Sept. 25, 2007), at *5 (although claim sought to be severed arose from separate conduct, "the underlying facts involve the same parties.

6

. . and are sufficiently related and intertwined that, in the interests of judicial economy and in order to promote settlement, they should not be severed from the rest of the claims"); *Rojas v. National Accident Insurance Underwriters, Inc.*, 2001 WL 682231 (W.D. Tex. Mar. 1, 2001), at *2 ("[W]hile the legal issues are clearly separate, consolidation of all the legal and factual issues will expedite the resolution of the numerous claims before the Court.").

For the reasons noted above, EPNG strongly urges that all of its claims be adjudicated together in this district. To the extent the Court may have concerns regarding venue for the paragraph (a)(1) RCRA claim, EPNG, consistent with the proposal it made in the parties' joint meet and confer statement, requests that the Court adjudicate the UMTRCA claim and stay adjudication of the RCRA (a)(1) claims. As argued above and at the hearing, this Court's adjudication of the UMTRCA claim (and/or EPNG's attendant request for a judicial declaration that the waste in question is "byproduct" material to which RCRA does not apply) should resolve EPNG's Amended Complaint. If not, the Court can then decide whether to retain or transfer the RCRA (a)(1) claim at that time. However, if the Court is nevertheless inclined to dismiss or transfer the paragraph (a)(1) RCRA claim, EPNG requests that the Court should sever that claim under Rule 21 and transfer it to Arizona so that EPNG's UMTRCA claim in all events can be litigated in this district, where venue for that claim is indisputably proper.

     *    *    *

For these additional reasons, Defendants' motion to dismiss or transfer for improper venue should be denied.

Dated this 12th day of December, 2007.

        Respectfully submitted,

        /s/
Jerry Stouck, D.C. Bar No. 343400
Robert L. Shapiro, D.C. Bar No. 415854
GREENBERG TRAURIG, LLP
800 Connecticut Avenue, N.W., #500
Washington, DC  20006
202.331.3100

Thomas L. Sansonetti, D.C. Bar No. 949610
HOLLAND & HART, LLP
2515 Warren Avenue, Suite 450
Cheyenne, Wyoming  82001
307.778.4200

William G. Myers III, D.C. Bar No. 408573
HOLLAND & HART, LLP
U.S. Bank Plaza
101 S. Capitol Boulevard, Suite 1400
Boise, Idaho  83702
208.342.5000

David G. Palmer
Brian L. Duffy
Naomi G. Beer, D.C. Bar No. 450875
Christopher J. Neumann, D.C. Bar No. CO0044
GREENBERG TRAURIG, LLP
The Tabor Center
1200 Seventeenth Street, Twenty-Fourth Floor
Denver, Colorado  80202
303.572.6500