IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                 )
EL PASO NATURAL GAS COMPANY,                     )
                                                 )
           Plaintiff,                            )
                                                 )
           v.                                    )        Civ. Action No. 07-cv-00905 (RJL)
                                                 )
UNITED STATES OF AMERICA,  et al.,               )
                                                 )
           Defendants.                           )
_____)

**UNITED STATES' REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S APA CLAIM
FOR LACK OF SUBJECT MATTER JURISDICTION**

**INTRODUCTION**

Plaintiff El Paso Natural Gas Company's ("EPNG's") Administrative Procedure Act

("APA") claim seeks to challenge a purported April 2004 determination by Defendant United

States Department of Energy ("DOE") that certain real properties within the vicinity of a former

uranium mill near Tuba City, Arizona, including the Tuba City landfill ("the Landfill") and "the

Highway 160 Site," should not be included as part of the Tuba City "processing site" under the

Uranium Mill Tailings Radiation Control Act ("UMTRCA"), 42 U.S.C. § 7912.

The Court lacks subject matter jurisdiction over EPNG's APA claim for three

independent reasons: (1) EPNG lacks prudential standing to sue; (2) EPNG does not challenge

any final agency action; and (3) Congress has expressly precluded judicial review under

UMTRCA section 7912(d).  As set forth below, EPNG's arguments in opposition to Defendants'

motion to dismiss all lack merit.

**ARGUMENT**

**I.    EPNG LACKS PRUDENTIAL STANDING**

As an initial matter, EPNG mischaracterizes the zone-of-interests test when it suggests

that it is sufficient for EPNG to show that the claim asserted falls within the zone of interests

protected by the statute, as opposed to showing that the interests of EPNG itself fall within the

zone of interests. *See* Opp. at 2, 5. To demonstrate prudential standing, a plaintiff must show an

injury to *itself* that is within the zone of interests of the statute, and cannot just rely on the nature

of the claim asserted. *See Hazardous Waste Treatment Council v. Thomas,* 885 F.2d 918, 925-26

(D.C. Cir. 1989) ("[W]e have asked not whether a particular case raises a suitable challenge, but

whether the interests of a particular party make it suitable to raise that challenge. . . . The

[prudential] standing requirement asks *who* may bring a particular challenge, not what particular

challenges may be brought. The same claim may be viable in the hands of one challenger and

not in those of another that, for example, has interests that make it less than 'a reliable private

attorney general to litigate the issue of the public interest in the . . . case.'") (citation omitted).

Accordingly, while there may be parties who have prudential standing to bring the APA

claim asserted by EPNG (*e.g.*, residents of allegedly contaminated properties), EPNG itself does

not have prudential standing to bring this claim because the injury that EPNG itself alleges is

purely economic. Indeed, EPNG's Amended Complaint makes this quite clear. EPNG alleges:

> EPNG is an aggrieved party under 5 U.S.C. § 702, whose rights are
> within the zone of interest contemplated by Congress in enacting
> UMTRCA. Action and threatened action by the Tribes to hold
> EPNG liable for continued clean-up of the Mill and its "vicinity
> properties" . . . could subject EPNG to the burden, expense, and
> hardship of a uranium mill tailings site clean-up . . . .

Amended Complaint ¶ 98.[1]

Contrary to EPNG's argument, EPNG's pleaded interest in avoiding any responsibility for cleanup costs does *not* make EPNG a party "who in practice can be expected to police" the environmental interests that UMTRCA protects. *See* Opp. at 6 (quoting *Animal Legal Defense Fund, Inc. v. Glickman*, 154 F.3d 426, 444 (D.C. Cir. 1998)). There are generally "two types of parties with the right incentives to police an agency's enforcement of the laws it administers," (1) "those whom the agency regulates," and (2) "those whom the agency [i]s supposed to protect." *Hazardous Waste Treatment Council v. Thomas* 885 F.2d at 922. EPNG falls into neither category.

In fact, EPNG's economic interest in avoiding liability for cleanup costs make it particularly *ill-suited* to police the environmental interests that UMTRCA protects. To the extent this point is not self-evident, the terms of EPNG's cooperative agreement with the Navajo Nation, attached as an exhibit to Defendants' opening brief (*see* Opening Mem., Ex. 2), underscore that EPNG's economic interests diverge from the environmental objectives in UMTRCA. Under the terms of its agreement with the Navajo Nation, the Navajo Nation committed to EPNG that during a joint lobbying initiative, the Navajo Nation would "not take any affirmative action that would cause or encourage the U.S. Environmental Protection Agency ("EPA") to initiate environmental investigation or remediation activities with respect to the Tuba City Uranium Mill or its known or potential UMTRCA 'vicinity properties.'" Ex. 2 at 3. Obviously, if EPNG's economic interests were actually congruent with environmental protection, EPNG would not have sought and obtained the commitment of the Navajo Nation to *refrain* from

---

[1] Contrary to EPNG's assertion, Defendants have not "mischaracterize[d]" "the relevant interest that EPNG seeks to vindicate." *See* Opp. at 5. This relevant interest is plainly pleaded, and EPNG cannot run away from its own pleading.

taking affirmative actions that might encourage EPA remediation activities.

Furthermore, the D.C. Circuit has frequently dismissed on prudential standing grounds similar cases where litigants with an economic interest, but no environmental interest, sought to bring claims under environmental statutes. *See* cases cited at page 13 of Defendants' opening brief. Contrary to EPNG's argument (*see* Opp. at 9-10), these cases are highly relevant precedent and reflect that parties without any environmental interest, such as EPNG, lack prudential standing to bring claims under such statutes. Indeed, EPNG's standing argument is considerably weaker than some of the other litigants found to lack prudential standing in environmental cases. For example, in *Cement Kiln Recycling Coalition*, 255 F.3d 855, 869-71 (D.C. Cir. 2001), and *Hazardous Waste Treatment Council v. EPA*, 861 F.2d 277, 282-87 (D.C. Cir. 1988), trade associations representing firms involved in the disposal of hazardous waste petitioned for review of environmental standards enacted by EPA. The trade associations contended they would suffer a competitive injury if competitors faced lax environmental standards, and further contended that their competitive interests were congruent with the environmental interests protected by the statute inasmuch as they sought to tighten environmental standards and thereby foster a cleaner environment. Notwithstanding the fact that the trade associations sought more protective environmental standards, the D.C. Circuit found that the trade associations' competitive interests were not congruent with those in the statute and that the trade associations lacked prudential standing.

EPNG's emphasis on the point that the existence of an economic injury does not automatically disqualify a party from showing prudential standing is misplaced. *See* Opp. at 8-9. Here, as in *National Ass'n of Home Builders v. United States Army Corps of Engineers*, 417 F.3d 1272, 1287-88 (D.C. Cir. 2005), EPNG's problem is not that its economic interests blight its

qualifying environmental interests, it is that it has failed to demonstrate that it has incurred any

qualifying environmental injury.[2]  To be sure, EPNG alleges environmental harm to *other parties*

– namely, to the residents located near the sites.  *See* Opp. at 11, n.2 (citing portions of amended

complaint where EPNG alleges harm to residents).  But for purposes of demonstrating its own

standing to maintain suit, EPNG cannot rely on alleged environmental harm to others.

EPNG contends it has incurred environmental injury because, "as a major participant in

the national energy market," EPNG has a "record and reputation for environmental

responsibility." *See* Opp. at 8.  However, EPNG's newly asserted "reputation for environmental

responsibility," (an injury which is neither pled nor supported by evidence) does not fall within

the zone of interests of UMTRCA.  Congress' concern in enacting UMTRCA was to minimize or

eliminate radiation health hazards to the public, not to protect the reputation of former owners

and operators of mill sites who contributed to such health hazards.  *Cf. Hazardous Waste*

*Treatment Council v. Thomas*, 885 F.2d 918, 924, n.3 (to demonstrate an environmental injury a

petitioner must assert an injury arising from harm to the "environment per se," not some

"derivative" injury).

Furthermore, even if Congress had been concerned with EPNG's reputation in enacting

UMTRCA, EPNG could not rely on this newly-asserted "reputational" interest to survive the

---

[2]    Contrary to EPNG's argument, the D.C. Circuit's decision in *National Ass'n of Home Builders* ("*NAHB*") is directly on point.  EPNG attempts to distinguish *NAHB* by arguing that appellants in that case had failed to show the existence of any injury "at all."  *See* Opp. at 8.  This characterization of *NAHB* is inaccurate.  In fact, the appellants in *NAHB* alleged a constitutionally sufficient economic injury.  *See* 417 F.3d at 1286-87 ("We think it is fairly 'self-evident' that the various appellants . . . satisfy the 'irreducible constitutional minimum' of Article III standing . . . . (injury-in-fact, causation, redressability)).  The appellants, however, failed to allege an environmental injury and thus lacked prudential standing.  *Id*. at 1288.  EPNG further attempts to distinguish the D.C. Circuit's decision in *NAHB* by characterizing it as "wrong."  *See* Opp. at 8.  But an on-point and controlling D.C. Circuit precedent cannot be ignored because EPNG believes the court should have ruled differently.

instant motion to dismiss, where EPNG failed to plead any such interest in its Complaint.  To

survive a motion to dismiss on standing grounds, a Complaint must adequately plead an injury.

*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that to survive motion to

dismiss, a complaint must contain allegations of injury).

Finally, EPNG points to UMTRCA, 42 U.S.C. § 7925, and suggests that section 7925

itself puts EPNG's economic interests within the zone of interests of the statute.  *See* Opp. at 9.

This contention is ridiculous.  Section 7925 directs the Attorney General to use existing law to

pursue claims, for costs incurred by the United States remediating sites, against former mill

operators such as EPNG, as appropriate and as in the public interest.  *See* Opp. at 9.  Thus,

section 7925 clarifies that Congress did *not* intend through enacting UMTRCA to shield former

mill operators such as EPNG from liability.  But there is nothing in section 7925 that indicates

that Congress intended to protect EPNG's economic interests or that suggests that EPNG can be

expected to police the environmental interests that UMTRCA protects.

In short, EPNG lacks prudential standing to maintain its APA claim.

## II.    EPNG HAS NOT IDENTIFIED ANY REVIEWABLE FINAL AGENCY ACTION

EPNG also does not identify any reviewable agency action.  EPNG's APA claim is

premised entirely on an April 2004 letter from Donna Bergman-Tabbert, Director, Land & Site

Management, DOE, to Mr. Joe Shirley, Jr., President, the Navajo Nation.[3/]  Contrary to EPNG's

characterization, however, this April 2004 letter does not contain any reviewable final DOE

action under 42 U.S.C. § 7912(e)(2) concerning the designation as vicinity properties of the

Landfill, the Highway 160 Site, or any properties.

---

[3/] EPNG does not contend that it is bringing any claim for agency action unlawfully withheld
under APA section 706(1).  *See* United States' Opening Mem. at 23-24.

As an initial matter, EPNG concedes that the December 2003 letter from Mr. Shirley to

Ms. Bergman-Tabbert, to which the April 2004 letter responds, does not contain any explicit

request for DOE to act pursuant to section 7912(e)(2) to designate new vicinity properties as part

of the Tuba City processing site.  *See* Opp. at 11-12.  The Navajo Nation's December 2003 letter

speaks for itself and generally conveys that the Navajo Nation Environmental Protection Agency

has preliminarily investigated certain contaminated sites, including the Landfill and Highway 160

sites, and is engaging a host of federal agencies in discussions regarding these sites.  *See* Opening

Mem. Ex. 3.  The letter just makes one request of DOE – a request for a meeting at which the

Navajo Nation EPA and DOE would "begin to formulate appropriate actions for the clean

closure of . . . disposal sites and eliminate the current and potential risks to Navajo human heath

and the Navajo Nation environment."  *See id*. at 2.  Contrary to EPNG's characterization, the

Navajo Nation's request for a meeting to "begin" to discuss potential actions is simply that – a

request for a meeting to begin to discuss potential actions.  It is not a request for DOE to

designate additional vicinity properties under section 7912(e)(2).

Despite the absence of any reference in the Navajo Nation letter at all to UMTRCA,[4]

EPNG argues that the Navajo Nation's letter should have been construed by DOE as an implicit

request for the designation of additional vicinity properties under UMTRCA section 7912(e)(2),

because, according to EPNG, DOE lacks procedures through which parties may request the

designation of additional vicinity properties under 42 U.S.C. § 7912(e)(2).  *See* Opp. at 12.

Regardless of the existence of such procedures, the Navajo Nation or anyone else could have

---

[4]  The reference in the Navajo Nation's letter to potential "closure" actions appears to refer to
"closure" requirements in the Resource Conservation and Recovery Act ("RCRA") that are
applicable to owners and operators of hazardous waste treatment, storage, and disposal facilities .
*See* 40 C.F.R. § 264.111 and 40 C.F.R. § 265.111 (setting forth requirements for "closure" of a
RCRA regulated waste unit.).   The term "closure" does not appear in UMTRCA.

readily made an unambiguous request for the designation of UMTRCA vicinity properties under

42 U.S.C. § 7912(e)(2) if they had wanted to do so.  No such request was made, and no principle

of administrative law requires an agency to respond to a request that is never made of it.[5/]

Having not been asked to take any action relating to the designation of vicinity properties

under 42 U.S.C. § 7912(e)(2), DOE's April 2004 response letter, unsurprisingly, does not take

any such action.  Pursuant to *Bennett v. Spear*, 520 U.S. 154 (1997), a reviewable final agency

action must (1) mark the consummation of an agency decisionmaking process, and (2) be "one by

which 'rights or obligations have been determined,' or from which 'legal obligations will flow.'"

*Id.* at 178 (citations omitted).  The April 2004 letter meets neither condition of this test.

First, DOE's letter does not mark the consummation of an agency decisionmaking

process.  The letter grants the Navajo Nation's request for a meeting to "begin to formulate

appropriate actions" with respect to the sites mentioned in the Navajo Nation's letter.  An

agreement to meet to begin to discuss potential actions does not signal the consummation of an

agency decisionmaking process.  If anything, it signals the *commencement* of an agency

decisionmaking process.  Moreover, contrary to EPNG's suggestion, DOE's acceptance of the

Navajo Nation's request for a meeting cannot be viewed as just some ancillary element of DOE's

response letter.  *See* Opp. at 14.  The Navajo Nations' request for a meeting was the sole request

it made of DOE, and DOE's acceptance of this sole request marked the crux of DOE's response.

In addition, nothing in the April 2004 letter determines legal rights or obligations.  EPNG

---

[5/]  Ordinarily, in cases where agency letters have been deemed to constitute final agency action, the letters in question have responded to an explicit request for a particular agency action.  *See, e.g., Her Majesty the Queen in Right of Ontario v. EPA*, 912 F.2d 1525, 1531-32 (D.C. Cir. 1990) (finding reviewable EPA letters that responded to petitions for rulemaking that requested very specific relief); and *Ciba-Geigy Corp. v. EPA,* 801 F.2d 430, 436 (D.C. Cir. 1986) (finding reviewable letter that responded to specific request for clarification of legal issue).

contends that statements in the letter resulted in two legal consequences: (1) that EPNG would

face potential legal liability for remediation of the Landfill and the Highway 160 Site, and (2)

that DOE would not be responsible under UMTRCA for any remediation of the Landfill or

Highway 160 Site. *See* Opp. at 15. EPNG is wrong on both counts.

In the first place, DOE's April 2004 letter plainly does not have any legal consequences

relating to EPNG's own potential liability for contamination at the sites. *See* Opp. at 15. To the

extent EPNG has liability for contamination at the sites at issue, it arises from EPNG's own

actions and from sources of law other than UMTRCA. None of the statements in DOE's 2004

letter creates or diminishes any liability on the part of EPNG. With respect to any EPNG liability

at the sites in question, DOE's letter "left the world just as it found it." *Independent Equip.*

*Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004).

DOE's April 2004 letter also does not have any legal consequences relating to any

responsibility DOE may have under UMTRCA for remediation of the Landfill or the Highway

160 Site. To support its position that the letter has some legal consequences, EPNG points (*see*

Opp. at 12) to DOE's statements in the letter noting (1) that DOE's authority to conduct surface

remediation under UMTRCA expired in 1998 and (2) that DOE has continuing authority for

groundwater remediation. These statements, however, simply reiterate Congress' direction in

section 7922(a)(1), 42 U.S.C. § 7922(a)(1), and add nothing beyond what the statute expressly

provides. Agency statements that simply reiterate existing law do not in and of themselves have

legal consequences. *Cf. Independent Equip. Dealers Ass'n v. EPA*, 372 F.3d at 427 (noting a

statement that is purely informational in nature does not constitute agency action).

EPNG next points to DOE's statement of "belief" regarding the source of groundwater

9

contamination at one of the two sites at issue – the Landfill. *See* Opp. at 12.[6]  However, DOE's

statement of "belief" does not constitute an unequivocal finding of fact, much less constitute a

determination of legal rights or obligations with respect to UMTRCA.  A statement of belief

concerning a factual matter does not equate to a legal determination that creates rights or

obligations.

Furthermore, contrary to EPNG's characterization (*see* Opp. at 13), DOE's April 2004

letter does not convey a categorical refusal to take further actions under UMTRCA.  DOE notes

in the letter that Congress has directed DOE to keep an UMTRCA disposal cell in Colorado open

(*see* 42 U.S.C. § 7922) to receive any UMTRCA materials that may be discovered after

termination of the surface remediation program, and DOE offers to discuss with appropriate

officials whether that disposal cell can be made available for disposal of materials from the

Landfill.  *See* Opening Mem. Ex. 4.   Thus, EPNG's characterization of the letter is inaccurate

and misleading.

In sum, the April 2004 letter does not contain any legal determination regarding the

designation of the Landfill or the Highway 160 Site as vicinity properties under 42 U.S.C. §

7912(e)(2).  It reflects a piece of routine agency correspondence that is not judicially reviewable.[7]

---

[6]  The April 2004 letter contains no specific statements at all addressing the Highway 160 site or
other sites beyond the Landfill.

[7]  EPNG's opposition contains a discussion of EPNG's position that DOE can and should
continue to designate vicinity properties notwithstanding DOE's lack of authority to perform any
additional surface remediation under UMTRCA.  *See* Opp. at 17.  Whether DOE can and should
continue to make vicinity property designations following termination of DOE's authority to
conduct surface remediation does not bear on the jurisdictional issues raised in the instant motion
to dismiss.  In the event the Court concludes it has jurisdiction, DOE will address EPNG's merits
arguments at the appropriate time.

**III.    UMTRCA PRECLUDES JUDICIAL REVIEW OF THE ALLEGED AGENCY ACTION**

Even if EPNG had prudential standing and could identify a final DOE action, the judicial review provision of UMTRCA precludes APA review.  As EPNG acknowledges, section 7912(d) provides that "[t]he designations made, and priorities established, by [DOE] under this section shall be final and not be subject to judicial review."  42 U.S.C. § 7912(d).  Here, in characterizing DOE's April 2004 letter as a final agency decision that certain properties should not be designated as vicinity properties within the Tuba City processing site (*see* Amended Complaint ¶ 96), EPNG challenges DOE's designation of the Tuba City processing site. Therefore, section 7912(d) precludes judicial review of EPNG's APA claim.

EPNG offers two arguments in support of judicial review: first, it argues that the bar on judicial review set forth in section 7912(d) only applies to initial designations of processing sites made in 1979 under section 7912(a)(1) (*see* Opp. at 18-22); second, it argues that a decision not to include additional vicinity properties within an existing "processing site" does not constitute a "designation made" within the meaning of section 7912(d) (*see* Opp. at 22-25).  Neither argument has merit.

In the first place, nothing in UMTRCA limits the bar on judicial review of designations set forth in section 7912(d) to initial designations of processing sites made in 1979 under section 7912(a)(1).  The bar on judicial review in section 7912(d) applies to designations made "under this *section*." 42 U.S.C. § 7912(d) (emphasis added).  The applicable *section* to which the bar applies includes section 7912 in its entirety.  Thus, the section 7912(d) bar does not just encompass initial designations of processing sites made under section 7912(a)(1).  It encompasses designations of vicinity properties made after 1979 pursuant to section 7912(e)(2).

Likewise, since the section 7912(d) bar applies to section 7912 in its entirety, EPNG's

11

extended and convoluted discussion of the "boundaries" language in section 7912(a)(2) misses the point. *See* Opp. at 18-21. Whether a designation action is an initial designation made under section 7912(a)(1), or a subsequent designation action applying section 7912(e)(2), DOE necessarily as part of its designation action is engaged in a determination concerning the appropriate boundaries of the processing site. Section 7912(a)(2) was cited by Defendants in the opening brief because it reflects Congress' express recognition that DOE "designations" of "processing sites" must encompass determinations concerning the boundaries of processing sites. But, contrary to EPNG's contention, Defendants' argument regarding the unavailability of judicial review is not based either "exclusively" or "primarily" on the "boundaries" language in section 7912(a)(2), as EPNG asserts. *See* Opp. at 20. Defendants' argument is based on the plain language in 7912(d) prohibiting judicial review of any designation made under section 7912.

EPNG's second argument (*see* Opp. at 20-22) is also misplaced. Contrary to EPNG's position, a DOE determination applying section 7912(e)(2) with the result that additional vicinity properties are not included within an existing "processing site" constitutes a "designation made" within the meaning of section 7912(d). In the first place, as EPNG itself points out (*see* Opp. at 13), agency "action" encompasses not just affirmative action but also the denial of requested relief. *See* 5 U.S.C. § 551(13). Applying this principle, an action refusing a request to modify an existing designation of a processing site is just as equally a "designation" action as an action modifying an existing designation.

EPNG contends that if DOE declines to expand the scope of an existing processing site to include additional vicinity properties, such an action should be considered a "designation not made" and should fall outside of the judicial review bar. *See* Opp. at 22. This argument lacks

merit.  A DOE action declining to add particular vicinity properties is, in fact, a "designation made" because it reaffirms the appropriateness of the existing scope of the processing site. Moreover, regardless of how one characterizes an action declining to add vicinity properties to a processing site, the *challenge* to such an action clearly necessitates judicial review of DOE's existing designation of the site, which, even under EPNG's phraseology, would qualify as a challenge to a "designation made."

Indeed, EPNG's proposed distinction between decisions adding or not adding to the scope of a processing site would have the absurd effect of completely eviscerating the section 112(d) judicial review bar.  Under EPNG's position, a person could readily circumvent the section 112(d) bar on review of designations by simply requesting that DOE modify an existing designation and then challenging DOE's denial of the request.

Furthermore, this Court has already made clear that, in its view, a request for the Court to second-guess a DOE decision refusing to designate a particular location as a vicinity property implicates the judicial review bar at section 112(d).  *See Sierra Club v. Edwards*, No. 81-1368, 1983 U.S. Dist. LEXIS 17625. at * 9-10 (D.D.C. Apr. 18, 1983) ("In contrast to . . . the appropriateness of designating or refusing to designate a particular location as a vicinity property, the issue of the adequacy of defendants' rate of considering designations of vicinity properties appears to be more amenable to judicial review and more clearly beyond the scope of the nonreviewability provision of section 7912(d).").

EPNG finally argues that it would have been consistent with the remedial purposes of the statute if Congress had allowed judicial review of challenges seeking to expand the scope of a processing site, but not challenges seeking to diminish it.  *See* Opp. at 24.  But section 7912(d) does not make this distinction and broadly bars judicial review of designations, regardless of the

13

nature of the challenge.  In short, the judicial review provision language unambiguously precludes the instant suit, and the plain language of the statute must be given effect.

**IV.    EPNG's DISCUSSION OF TESTIMONY AT A 2007 CONGRESSIONAL HEARING HAS NO RELEVANCE TO THE JURISDICTIONAL ISSUES RAISED**

In the initial part of its opposition brief, EPNG directs the Court's attention to excerpts from an October 2007 Congressional hearing that addressed ongoing efforts to clean up radiological contamination on tribal lands.  *See* Opp. at 3-4.  EPNG, however, does not even purport to explain the relevance of this testimony to any jurisdictional issue raised in Defendants' motion to dismiss.

EPNG suggests that the Congressional testimony is offered as a preview of the arguments EPNG will make in support of the merits of its APA claim.  Yet, EPNG fails to explain how testimony from a 2007 hearing could be considered as part of the administrative record before DOE when DOE allegedly took "action" in a 2004 letter.

In any event, the United States strongly objects to EPNG's characterization of DOE's Congressional testimony to the extent EPNG seeks to imply bad faith on the part of DOE or to imply any unwillingness on the part of DOE to conduct additional remediation at the sites in question as appropriate and as authorized by Congress.

<b>CONCLUSION</b>

WHEREFORE, for the reasons set forth above and for the reasons set forth in Federal Defendants' opening brief, Plaintiff's first claim for relief should be dismissed for lack of subject matter jurisdiction.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources
        Division
U.S. Department of Justice


_____/s/_____
ERIC G. HOSTETLER, Attorney     D.C.
Bar No. 445917
Environmental Defense Section
P.O. Box 23986
L'Enfant Plaza Station
Washington, D.C.  20026-3986
June 2, 2008                                    (202) 305-2326

15