UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EL PASO NATURAL GAS COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 07-905 (RJL) |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(March 31, 2009) [#19]

Plaintiff El Paso Natural Gas Company ("EPNG") brings this suit against the United States, the Department of Energy ("DOE"), and DOE's Secretary, Steven Chu, among numerous other federal defendants (collectively, "defendants"),[1] alleging violations of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901, *et seq.*, in connection with certain properties alleged to be contaminated with residual radioactive waste. Presently before the Court is defendants' motion to dismiss plaintiff's APA claim for lack of subject matter jurisdiction. Because the relevant federal statute on which

---

[1] The additional federal defendants include: the Nuclear Regulatory Commission ("NRC"); the Environmental Protection Agency ("EPA") and its Administrator, Lisa Jackson; the Department of the Interior and its Secretary, Kenneth Salazar; the Bureau of Indian Affairs; the Department of Health and Human Services and its Secretary, Charles E. Johnson; the Indian Health Service; and the Department of Defense and its Secretary, Robert Gates. (Am. Compl. at 1 [Dkt. #7].) Pursuant to Federal Rule of Civil Procedure 25(d), the Court has, where appropriate, substituted the current secretaries for the secretaries who were named in the Complaint but who no longer hold office.

plaintiff's APA claim is based expressly precludes the form of judicial review plaintiff seeks, the Court will GRANT defendants' motion.[2]

## BACKGROUND

### I.     The Uranium Mill Tailings Radiation Control Act

Congress enacted the Uranium Mill Tailings Radiation Control Act ("UMTRCA"), Pub. L. No. 95-604, 92 Stat. 3021, *codified at* 42 U.S.C. §§ 7901, *et seq.*, in 1978 in an effort to "stabilize and control" the radioactive waste generated by the uranium mill operations that supported the United States' Cold War effort.  42 U.S.C. § 7901(a)-(b).  To achieve this goal, UMTRCA prescribed an ambitious and expeditious remediation program.  Pursuant to UMTRCA § 102, codified at 42 U.S.C. § 7912, DOE was required to designate uranium mill "processing sites" for DOE remediation at or near twenty-two specifically identified locations within one year of November 8, 1978.  42 U.S.C. § 7912(a)(1).  UMTRCA defined "processing sites" to include both contaminated uranium mill sites, *id.* § 7911(6)(A), and any other property "in the vicinity of such site" that DOE determined to be contaminated with residual radioactive materials (hereinafter a "vicinity property"), *id.* § 7911(6)(B).[3]  As part of DOE's designations, UMTRCA

---

[2]   The defendants' motion does not seek to dismiss plaintiff's RCRA claims. (Defs.' Mem. In Supp. at 1, n.1 [Dkt. #19].)  Accordingly, plaintiff's RCRA claims are not affected by this decision.

[3]   UMTRCA's definition of "processing site" provides in pertinent part:

(6) The term "processing site" means
(A) any site, including the mill, containing residual radioactive materials at which all or substantially all of the uranium was produced for sale to any Federal agency prior to January 1, 1971 under a contract with any Federal agency, . . . unless (i) such site was owned or controlled as of January 1, 1978, or is thereafter owned or controlled, by any Federal agency, or (ii) a [NRC or State] [Atomic Energy Act] license . . . for the

2

required DOE to "determine the boundaries" of each site, *id.* § 7912(a)(2), and include, to the maximum extent practicable, vicinity properties, *id.* § 7912(e)(1). Critically, however, UMTRCA also established in § 7912(e)(2) an exception to DOE's time-limited designation authority, granting DOE continuing authority beyond the one-year period to include any vicinity property as part of a processing site designated under UMTRCA if DOE determines such inclusion to be appropriate to carry out UMTRCA's purposes.[4] *Id.* § 7912(e)(2). With the exception of groundwater remediation restoration activities, UMTRCA required that DOE complete all remediation at designated sites prior to the termination of its authority under the statute, which Congress revoked on September 30, 1998. *Id.* § 7922(a)(1). Finally, in pertinent part here, UMTRCA also precludes judicial review of all "designations made" under § 7912. *Id.* § 7912(d).

## II. Tuba City, Arizona

Tuba City, Arizona was one of the locations specifically identified in UMTRCA. *Id.* § 7912(a)(1). Plaintiff and its predecessor, Rare Metals Corporation, operated a

---

production at such site of any uranium or thorium product derived from ores is in effect on January 1, 1978, or is issued or renewed after such date; and

*(B) any other real property or improvement thereon which (i) is in the vicinity of such site, and (ii) is determined by [DOE], in consultation with the [NRC], to be contaminated with residual radioactive materials derived from such site.*

42 U.S.C. § 7911(6)(A)-(B) (emphasis added).

[4] Section 7912(e)(2) states in full:

Notwithstanding the one year limitation contained in this section, the Secretary may, after such one year period, include any area described in section 7911(6)(B) of this title [defining a vicinity property] as part of a processing site designated under this section if he determines such inclusion to be appropriate to carry out the purposes of this subchapter.

42 U.S.C. § 7912(e)(2).

3

uranium processing mill (the "Mill") near Tuba City from approximately 1956 to 1966. (Am. Compl. ¶¶ 3, 27 [Dkt. #7].) The Mill, which was located on the Navajo Nation Reservation and near the Hopi Reservation, generated a significant amount of radioactive mill tailings and other waste. (*Id.* ¶¶ 1, 3.) Following UMTRCA's enactment, DOE designated the Mill a processing site under § 7912 and subsequently undertook remediation efforts. (*Id.* ¶¶ 58-60, 64.) While surface remedial action at the Mill site has since ceased, DOE continues to have an active groundwater remediation system in place.

In the early 2000s, the Navajo and Hopi Tribes identified two sites near the Mill that allegedly also contain radioactive and other waste materials generated by the Mill. (*Id.* ¶ 68.) The first, known as the Tuba City Dump, is located on both Navajo and Hopi Reservation land. (*Id.* ¶ 1.) The second, known as the Highway 160 Site, is located on the Navajo Reservation. (*Id.*) Neither site was included as a vicinity property in DOE's 1979 designation of the Mill, and DOE has not taken any remedial actions in connection with either site (hereinafter the "Properties"). (*Id.* ¶ 61.)

### III. DOE Correspondence & the Present Lawsuit

Plaintiff alleges that in December 2003, the Navajo Nation wrote DOE a letter requesting that the Properties be remediated as vicinity properties under UMTRCA. (*Id.* ¶ 69.) DOE responded on April 22, 2004 in a letter in which it allegedly issued a determination that the Properties were not vicinity properties under UMTRCA and, based on that determination, refused to provide ground water remediation. (*Id.* ¶ 70.) As a result, the Tribes have allegedly turned their sights on plaintiff, suing or threatening to sue plaintiff in order to force plaintiff to fund the Properties' remediation and compensate

4

the Tribes for personal injuries. (*Id.* ¶¶ 7, 76.) Plaintiff filed this suit in May 2007 in an effort to avoid such liability, alleging as its primary claim that DOE's decision not to designate the Properties as vicinity properties under UMTRCA is arbitrary and capricious and seeking a declaration under the APA and the Declaratory Judgment Act, 28 U.S.C. § 2201, that DOE is responsible for the Properties' remediation.[5] (Compl. ¶¶ 90, 93 [Dkt. #1]; Am. Compl. ¶¶ 99, 102.) On April 18, 2008, defendants moved to dismiss plaintiff's APA claim.[6]

## LEGAL STANDARD

As courts of limited jurisdiction, federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). In every case, therefore, "the jurisdictional requirements of Article III must be present before a court may proceed to the merits." *Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). When evaluating subject matter jurisdiction, plaintiffs bear the burden of proof. *See id.* at 828.

---

[5] Plaintiff also alleges as part of its APA claim that, in connection with DOE's decision not to designate the Properties as vicinity properties, DOE, EPA and the NRC failed to comply with UMTRCA's public participation provision, 42 U.S.C.§ 7921, which requires the agencies to "encourage public participation and, where appropriate, . . . hold public hearings" when carrying out UMTRCA. (Am. Compl. ¶¶ 74, 100.) Plaintiff characterizes its RCRA claims as secondary, (Am. Compl. ¶ 2), and, as noted above, they are not relevant to this decision.

[6] In addition to contending that plaintiff's APA claim is precluded by UMTRCA, defendants contend that plaintiff lacks prudential standing and has failed to identify a reviewable final agency action. (Defs.' Mot. to Dismiss at 1-2 [Dkt. #19].)

## ANALYSIS

While the APA provides a limited waiver of the United States' sovereign immunity with respect to certain agency actions, that waiver does not apply where a statute explicitly precludes judicial review. 5 U.S.C. §§ 701(a)(1), 702, 704; *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Courts, however, must carefully analyze statutory provisions precluding review, because there is "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986) (noting that courts should not cut off judicial review of agency actions "unless there is persuasive reason to believe that such was the purpose of Congress" (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967)). In this case, UMTRCA expressly provides in § 7912(d) that "[t]he designations made . . . by [DOE] under this section shall be final and not be subject to judicial review." 42 U.S.C. § 7912(d). Accordingly, whether plaintiff's APA claim is precluded turns on whether DOE's purported decision to not include the Properties as part of the Mill processing site pursuant to § 7912(e)(2) constituted a "designation made." Based on a plain reading of the statute, I find that it did.

Plaintiff attempts to draw a distinction between "designations made" in the year following November 8, 1978 pursuant to § 7912(a) and DOE's authority under § 7912(e)(2) to "include" vicinity properties "as part of a processing site designated under [§ 7912]" after the expiration of the one-year period. (Pl.'s Mem. In Opp'n at 20-22 [Dkt. #20].) Plaintiff, however, parses § 7912 too narrowly. As an initial matter, it is clear that § 7912(d) itself imposes no temporal or other limitation on its application, but

rather applies to *any* "designation made," whether before or after November 8, 1979. 42 U.S.C. § 7912(d) (precluding judicial review of "designations made . . . *under this section*" (emphasis added)). More importantly, a plain reading of UMTRCA indicates that a DOE decision to "include" a vicinity property within a processing site is, in fact, part and parcel of DOE's "designation" of the processing site itself. Rather than define "vicinity property" as an entity unto itself, UMTRCA includes the definition of vicinity property *within* its definition of "processing site." 42 U.S.C. § 7911(6)(B). As a result, to "include" a vicinity property within a processing site is nothing more than to designate the scope – or boundaries – of the processing site. *See id.* § 7912(a)(2) (directing DOE to "determine the boundaries" of each processing site "as part of [its] designation" of processing sites in the year immediately following November 8, 1978). This conclusion is exemplified by the use of the word "include" in § 7912(e)(1), which provides that "[t]he *designation* of processing sites within one year after November 8, 1978, . . . shall *include*, to the maximum extent practicable, the areas referred to in section 7911(6)(B) [defining vicinity properties]." *Id.* § 7912(e)(1) (emphasis added). And finally, the fact that § 7912(e)(2) explicitly authorizes DOE to "include" vicinity properties as part of designated processing sites *after* the one-year designation limitation similarly buttresses this conclusion. Surely the language in § 7912(e)(1) referencing the one-year *designation* limitation would be superfluous if including a vicinity property in a processing site was not a component of the designation of the site itself. Accordingly, plaintiff's attempt to

distinguish the inclusion of a vicinity property as part of a processing site after November 8, 1979, from the "designation" of the processing site itself is unavailing.[7]

Plaintiff next argues that even if DOE's purported decision to not include the Properties as part of the Mill processing site was in fact a designation, it was not a designation "made," but a designation "not made," and therefore § 7912(d) is inapplicable. I disagree. While facially appealing, plaintiff's argument fails upon closer inspection. To begin with, to read § 7912(d) in such a constrained manner would be to ignore the reality that any decision to take an affirmative action necessarily is a decision to *not* take its inverse. *See, e.g.*, 5 U.S.C. § 551(13) (defining "agency action" under the APA to include not only affirmative actions taken, but also the "denial thereof" and the "failure to act"). In the UMTRCA context, for example, a DOE decision to designate a given parcel of property as a processing site inherently includes a decision to *not* designate whatever property lies just outside the site's boundaries. Moreover, where, as here, plaintiff's challenge is to a failure to include certain properties as vicinity properties after the initial designation of the processing site, the challenge is necessarily a challenge to the initial "designation made." As discussed above, UMTRCA makes clear that the inclusion of a vicinity property as part of a processing site is not an isolated event, but

---

[7] Notably, plaintiff's argument on this point is also belied by plaintiff's own allegations. The Amended Complaint's first numbered paragraph begins: "This is a civil action relating to . . . DOE's decision *not to designate* certain sites containing residual radioactive materials . . . as 'vicinity properties' pursuant to [UMTRCA], 42 U.S.C. §§ 7912(a) & (e)." (Am. Compl. ¶ 1 (emphasis added).) Moreover, the Amended Complaint states that plaintiff "requests a judicial determination that . . . DOE *failed to designate* vicinity properties of the Mill . . . prior to *and following* November 8, 1979 to the maximum extent practicable as required by Section 7912 of UMTRCA, 42 U.S.C. §§ 7912(a) & (e)." (Am. Compl. ¶ 8 (emphasis added); *see also id.* ¶¶ 14, 67, 74, 75, 96, 97, 99.)

rather is a component of the processing site's designation, even if temporally separate. Plaintiff's distinction between designations "made" and designations "not made," therefore, is illusory. *See Sierra Club v. Edwards*, No. 81-1368, 1983 U.S. Dist. LEXIS 17625, at * 9-10 (D.D.C. Apr. 18, 1983) (contrasting a challenge to the *rate* at which DOE was considering designations of vicinity properties, which § 7912(d) did not bar, with challenging the "appropriateness of designating *or refusing to designate* a particular location as a vicinity property" (emphasis added)). Accordingly, for the foregoing reasons, the plain language and structure of UMTRCA provide "clear and convincing evidence" that Congress intended to preclude judicial review over plaintiff's APA claim, *Abbott Labs.*, 387 U.S. at 141, and therefore the Court must, and will, dismiss it.[8]

---

[8] Defendants also move to dismiss plaintiff's APA claim on prudential standing grounds, arguing that plaintiff's economic interests in avoiding liability do not fall within the zone of interests protected by UMTRCA. (Defs.' Mem. In Supp. at 11-14.) Because the Court finds, at a minimum, that it lacks subject matter jurisdiction over plaintiff's APA claim because it is precluded under UMTRCA, the Court need not address the closer question of whether plaintiff has prudential standing. Finally, to the extent the public participation portion of plaintiff's APA claim, *see supra* note 5, is not foreclosed by UMTRCA's limitation on judicial review, the Court also determines that plaintiff fails to identify a reviewable "final agency action." *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (establishing two conditions that must be met in order for agency action to be sufficiently final for review under the APA). First, the context and text of the April 22, 2004 DOE letter on which plaintiff relies make clear that DOE did not issue a "definitive" determination as to whether the Properties were vicinity properties under UMTRCA. Instead, DOE's only conclusive act in the letter was its acceptance of the Navajo Nation's request for a meeting. (Defs.' Mot. to Dismiss, Ex. 4, DOE Letter 2). Moreover, the letter did not set, or reject, any DOE obligations, but instead only informed the Navajo Nation of DOE's understanding of the relevant state of affairs. And finally, whatever potential liability plaintiff faces flows not from the DOE letter, but from the status quo, which the DOE letter identified but did not definitively affirm or alter. Simply stated, the DOE letter "left the world just as it found it," *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004), and therefore it was not a final agency action. Accordingly, plaintiff's APA claim, including its public participation component, must also be dismissed under Rule 12(b)(6) for failure to state a claim. *John Doe, Inc. v. Drug Enforcement Admin.*, 484 F.3d 561, 565 (D.C. Cir. 2007) ("When judicial review is sought under the APA, . . . the requirement of 'final agency action' is not jurisdictional.").

## CONCLUSION

Thus, for all the foregoing reasons, the Court GRANTS defendants' motion to dismiss plaintiff's APA claim. An appropriate Order will issue with this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge