## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EL PASO NATURAL GAS COMPANY,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **THE NAVAJO NATION,** ) | |
| ) | |
| *Intervenor-Plaintiff,* ) | |
| ) | |
| v. ) | **Civil Case No. 07-905 (RJL)** |
| ) | |
| **UNITED STATES OF AMERICA,** *et al.,* ) | |
| ) | |
| *Defendants.* ) | |

## MEMORANDUM OPINION
(March *19* 2012) [## 65, 74]

Plaintiff El Paso Natural Gas Company ("EPNG") and intervenor-plaintiff Navajo Nation (the "Tribe") bring this suit against the United States and numerous other federal defendants (collectively, "defendants") in connection with a former uranium mill located on the Navajo Nation Reservation near Tuba City, Arizona. Currently before this Court are the United States' Motion to Dismiss Plaintiffs' RCRA Claims [Dkt. #65] and the Plaintiffs' Motion for Limited Jurisdictional Discovery [Dkt. #74]. For the following reasons, the defendants' motion is GRANTED and the plaintiffs' motion is DENIED.

## BACKGROUND

### I.    Factual Background

This case's background has been largely set forth in previous opinions of this Court, *see El Paso Natural Gas Co. v. United States*, 774 F. Supp. 2d 40 (D.D.C. 2011) ("*EPNG II*"); *El Paso Natural Gas Co. v. United States*, 605 F. Supp. 2d 224 (D.D.C. 2009) ("*EPNG I*"), and our Circuit Court, *see El Paso Natural Gas Co. v. United States*, 632 F.3d 1272 (D.C. Cir. 2011). Accordingly, I will only set forth those facts directly relevant to the current issue.

From 1955 to 1968, the United States contracted with EPNG and its predecessor to mine, mill, and process uranium and vanadium ore for use in the manufacture of nuclear weapons. Intervenor Complaint ("Tribe Compl.") ¶ 28 [Dkt. #41]. These contractors processed the ore at a uranium processing mill (the "Mill") located on the Navajo Nation Reservation near Tuba City, Arizona. *See* Tribe Compl. ¶¶ 4, 28. During its operation, the Mill generated radioactive mill tailings—a type of radioactive waste. *See* Tribe Compl. ¶¶ 4, 7. At issue here are two nearby sites that plaintiffs allege are similarly contaminated with radioactive or hazardous wastes. Amended EPNG Complaint ("Am. EPNG Compl.") ¶¶ 1, 7-8 [Dkt. #7]; Tribe Compl. ¶¶ 3, 9-15.

The first of these sites is the Tuba City Open Dump (the "Landfill"), which is partially located on the Navajo Reservation. *See* Tribe Compl. ¶ 13. Formerly operated by the Bureau of Indian Affairs ("BIA"), the Landfill has not accepted new waste since 1997. *Id.* Since 1995, however, the BIA, under *RCRA* authority, has been investigating the Landfill to assess the site's contamination. *Id.* ¶ 14.

On September 10, 2010, the BIA took a new tack in its efforts at the Landfill and entered into a settlement agreement with the Environmental Protection Agency ("EPA")

under the authority of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  Def. Ex. 1, Admin. Settlement Agreement ("Admin. Settlement") ¶¶ 1-2 [Dkt. #65-1].[1]  Specifically, the BIA and the EPA entered into an Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study ("Administrative Settlement").  *Id.* ¶ 1.  Per the terms of the Administrative Settlement, the BIA will perform a "remedial investigation and feasibility study" ("RI/FS") at the Landfill.  *Id.*  The RI/FS's objectives are: (1) "to determine the nature and extent of contamination and any threat to the public health, welfare, or the environment caused by the release or threatened release of hazardous substances, pollutants or contaminants" and (2) to evaluate potential remedial responses to that threat.  *Id.* ¶ 9.

The second site is the Highway 160 Site, located across Highway 160 from the Mill.  Tribe Compl. ¶ 9.  Plaintiffs allege this site is contaminated with waste from the Mill.  *Id.*  In February 2009, Congress appropriated $5 million for cleanup of radiological contamination at the Highway 160 Site.  *Id.* ¶ 12; Energy & Water Development & Related Agencies Appropriations Act, Pub. L. No. 111-8, 123 Stat. 601, 617-18 (2009); Pls.' Ex. 6, Bloedel Decl. ¶ 3 [Dkt. #73-9].  In an agreement with the Tribe, the Department of Energy ("DOE") agreed to provide the Tribe with $4.5 million to remediate the site, while the DOE retained $500,000 for oversight.  Def. Ex. 2, Agreement Amendment 021 at 2 [Dkt. #65-2]; Def. Ex. 3, Agreement Amendment 026

---

[1]     The Administrative Settlement states that the parties entered into the agreement under the authority of §§ 104, 107, and 122 of CERCLA.  Admin. Settlement ¶¶ 1-2.

[Dkt. #65-3]; Bloedel Decl. ¶ 3.  After a joint evaluation of the site's contamination, the

Tribe was to assume primary responsibility for remediating the Highway 160 Site

through an excavation process expected to take roughly two years.  *See* Agreement

Amendment, Attach. A at 3-5, 8-9.  Further, as part of its agreement with the DOE, the

Tribe released the United States "of any liability or claim . . . concerning such remedial

action."  Agreement Amendment 026 at 2.

## II.    This Litigation

EPNG initiated this case on May 15, 2007, EPNG Compl. [Dkt. #1], and filed an

amended complaint on July 12, 2007, EPNG Am. Compl. [Dkt. #7].  EPNG alleged

violations of the RCRA, the Uranium Mill Tailing Radiation Control Act ("UMTRCA"),

42 U.S.C. §§ 6901, *et seq.* (2006), and the Administrative Procedure Act ("APA"), 5

U.S.C. §§ 701, *et seq*. (2006).  EPNG Am. Compl. ¶¶ 88-112.  The defendants first

moved to dismiss EPNG's UMTRCA and APA claims for lack of subject matter

jurisdiction, and on March 31, 2009, this Court granted that motion.  *See EPNG I*, 605 F.

Supp. 2d 224, 225-27.[2]  Then, on October 9, 2009, the defendants filed an answer and a

counterclaim, asserting that this Court has jurisdiction over that claim under the RCRA

and 28 U.S.C. § 1345.  *See* United States' Answer Am. Compl. & United States'

Countercl. ("Answer & Countercl.") 19 [Dkt. #37].

On March 5, 2010, the Tribe filed an intervenor-complaint alleging ten separate

claims against the United States.  Tribe Compl. ¶¶ 74-126.  In addition to alleging the

---

[2]       Our Circuit affirmed that dismissal.  *See* 632 F.3d at 1279.

same violations raised by EPNG's RCRA, APA, and UMTRCA claims, *id.* ¶¶ 74-83, 94-108,[3] the Tribe also alleged a Clean Water Act claim, which the Tribe has since conceded, and various other claims under federal and tribal law, *id.* ¶¶ 84-93, 109-26 . In July 2010, the United States moved to dismiss all of the Tribe's non-RCRA claims; and on March 27, 2011, this Court granted that motion. *See generally EPNG II*, 774 F. Supp. 2d 40.

Defendants now contend, in their Motion to Dismiss Plaintiffs' RCRA Claims [Dkt. #65], that recent events have removed this Court's subject matter jurisdiction over the plaintiffs' remaining claims—the RCRA claims regarding the Landfill and the Highway 160 Site. Defs.' Mot. 2. For the following reasons, I agree, and defendant's Motion to Dismiss must, therefore, be GRANTED.

## STANDARD OF REVIEW

Federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Under Federal Rule of Civil Procedure 12(b)(1), "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). Hence, a court may dismiss a complaint for lack of subject matter jurisdiction only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Richardson v. United*

---

[3]    The Tribe joined EPNG in its unsuccessful appeal of this Court's March 31, 2009 decision dismissing the UMTRCA and APA claims. *See* Notice of Appeal [Dkt. #46].

*States*, 193 F.3d 545, 549 (D.C. Cir. 1999) (quoting *Caribbean Broad. Sys., Ltd. v. Cable*

*& Wireless PLC*, 148 F.3d 1080, 1086 (D.C. Cir. 1998)).  While facts alleged in the

complaint must be accepted as true when reviewing a Rule 12(b)(1) motion to dismiss,

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coord. Unit,* 507 U.S. 163, 164

(1993), a court may consider material outside of the pleadings when determining whether

the court has jurisdiction to hear the case.  *See Venetian Casino Resort, L.L.C. v. EEOC,*

409 F.3d 359, 366 (D.C. Cir. 2005) (citing *EEOC v. St. Francis Xavier Parochial Sch.,*

117 F.3d 621, 624 n. 3 (D.C. Cir. 1997)).

Separately, under the principle of sovereign immunity, "the United States may not

be sued without its consent." *United States v. Mitchell* ("*Mitchell II*"), 463 U.S. 206, 212

(1983).  Because this principle constitutes a jurisdictional prerequisite, *id.,* "[a]bsent a

waiver . . . the Federal Government and its agencies [are shielded] from suit," *FDIC v.*

*Meyer*, 510 U.S. 471, 475 (1994).  Furthermore that waiver of sovereign immunity cannot

be implied.  It must be unequivocally expressed. *United States v. Mitchell* ("*Mitchell I*"),

445 U.S. 535, 538 (1980) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

## ANALYSIS

### I. CERCLA § 113(h) Removes Jurisdiction Over Plaintiffs' RCRA Claims Related to the Landfill.

CERCLA grants the President, and by delegation, the EPA's Administrator, the

authority to clean up hazardous wastes.  42 U.S.C. § 9604(a)(1)  (2006) (or "§ 104").

Specifically, "CERCLA § 104 . . . authorizes EPA, whenever any hazardous substance is

released or is threatened to be released into the environment, to undertake two types of

response actions: (1) to remove or arrange for the removal of the hazardous substance; and (2) to provide for remedial actions relating to the release or 'substantial threat of release' of the substance." *Gen. Elec. Co. v. EPA*, 360 F.3d 188, 189 (D.C. Cir. 2004) (quoting 42 U.S.C. § 9604). This authority is limited, however, *inter alia*, in that the EPA may not commence a CERCLA action in response to a "naturally occurring substance." 42 U.S.C. § 9604(a)(3)(A); *see also* Pls.' Opp'n 7 [Dkt. #73].

Importantly, CERCLA itself shields pending CERCLA response actions from lawsuits that might otherwise interfere with the response's expeditious cleanup. *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1249 (10th Cir. 2006) (internal citations and quotations omitted). Indeed, CERCLA achieves this through its timing of judicial review provision, 42 U.S.C. § 9613(h) (or "§ 113(h)"), which is presently at issue here. Section 113(h) states:

> No federal court shall have jurisdiction under Federal law . . . to review *any challenges* to removal or remedial action selected under section 9604 of this title, in any action except one of the following [exceptions].[4]

§ 9613(h) (emphasis added). When interpreting this provision, courts have overwhelmingly concluded that "once an activity has been classified as a CERCLA § 9604 removal or remedial action, § 9613(h) amounts to a blunt withdrawal of federal jurisdiction," *see e.g., Jach v. Am. Univ.*, 245 F. Supp. 2d 110, 114 (D.D.C. 2003) (internal citations and quotations omitted), and that "litigation which interferes with even

---

[4]     The five enumerated exceptions to 42 U.S.C. § 9613(h) are not at issue here.

the most tangential aspects of a cleanup is prohibited." *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Pena*, 62 F. Supp. 2d 1, 10 (D.D.C. 1999).

EPA and BIA's response actions at the Landfill here, conducted according to their Administrative Settlement, easily qualify as a removal action under § 104 of CERCLA. Specifically, BIA has committed to perform a "remedial investigation and feasibility study" ("RI/FS") at the Landfill. *See* Administrative Settlement ¶ 1. This RI/FS meets the criteria for a CERCLA "removal" action because it requires the BIA and EPA to investigate the release or threat of release of hazardous substances at the Landfill and evaluate potential cleanup solutions. *See* Administrative Settlement ¶ 9.[5]

But, in their RCRA claims, the plaintiffs have requested an injunction ordering defendants to "perform cleanup activities" at the Landfill.   EPNG Am. Compl. ¶ H; Tribe Compl. ¶ I.3.  Were this Court to grant that relief, the government's ongoing RI/FS and remedial process would undoubtedly be obstructed: whether the requested injunction would preempt a remedial decision, interrupt an ongoing remedial process, or even second-guess a "no-action" decision.  Therefore, the claims effectively constitute a "challenge" under § 113(h) to the defendants' removal action and are presently barred by that statute.

---

[5]      CERCLA's definition of "removal" includes "actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances." 42 U.S.C. § 9601(23). *See also* 42 U.S.C. § 9604(b)(1) (authorizing the President, where § 104 removal actions are authorized, to "undertake such investigations, monitoring, surveys, testing, and other information gathering as he may deem necessary or appropriate to identify the existence and extent of the release"); *Razore v. Tulalip Tribes of Wash.*, 66 F.3d 236, 238-39 (9th Cir. 1995) (holding a RI/FS was a removal action under CERCLA); *Jach*, 245 F. Supp. 2d at 113-16 (holding § 113(h) barred claims where government was developing a RI/FS).

Plaintiffs raise a number of arguments in response. In particular, plaintiffs argue that (1) defendants lack an adequate basis to select a removal action under § 104 of CERCLA; (2) § 113(h) is inapplicable to claims filed *before* the government initiates a removal or remedial action; (3) the plaintiffs' RCRA claims do not *challenge* the government's selected removal action; and (4) the completion of the government's remedial action is too uncertain to trigger § 113(h). Pls.' Opp'n 19-41. Unfortunately for plaintiffs, I disagree with all of their arguments.

## A. EPA has CERCLA authority to initiate a removal action at the Landfill.

Although plaintiffs challenge the government's authority to initiate a CERCLA action, they misstate the scope of that authority. *See* Pls.' Opp'n 19. Plaintiffs contend that § 113(h) requires a determination that a § 104 action relates to an actual release of a hazardous substance or a harmful pollutant or contaminant. *See id.* Not so. CERCLA authorizes an investigation and a response to either an actual or a *threatened* release of hazardous substance. *See* 42 U.S.C. §§ 9601(23), -(24), -9604(a)(1).

Undaunted, plaintiffs urge this Court to assume jurisdiction because certain factual CERCLA issues are "inextricably intertwined" with factual issues raised by plaintiffs' RCRA claims. Pls.' Opp'n 21-22. In addition they advocate allowing plaintiffs, either simultaneously or alternatively, jurisdictional discovery. Pls.' Opp'n 21-22; *see also* Pls.' Joint Mot. Limited Jurisdictional Discovery ¶¶ 4, 8-10 [Dkt. #74]. Ultimately, they

want the Court to treat defendants' motion as a summary-judgment motion. Pls.' Opp'n 22.[6]  I disagree.

The path outlined by the plaintiffs is not only unnecessary, it is prohibited by law. The EPA and BIA have already determined that the conditions at the Landfill "constitute an actual and/or threatened 'release' of a hazardous substance . . . as defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22)." Administrative Settlement ¶ 20.  Given that the EPA and BIA have undertaken a removal action in response, this Court is precluded from exercising jurisdiction under § 113(h) or allowing the plaintiffs to proceed with discovery. *See Raytheon Aircraft Co. v. United States,* 435 F. Supp. 2d 1136, 1154 (D. Kan. 2006) (denying plaintiff's discovery request as "contrary to the purpose behind" § 113(h)).[7]  Allowing the plaintiffs to proceed through the artifice of

---

[6]      Plaintiffs contend that whether the Landfill "includes non-naturally occurring hazardous wastes that may trigger CERCLA" is a disputed issue of material fact. Pls.' Opp'n 20-21.

[7]      Plaintiffs claim that the defendants have factually challenged the Court's jurisdiction, and therefore the defendants must bear the burden to show that § 113(h) applies. Pls.' Opp'n. 21-22. Further, plaintiffs seek jurisdictional discovery regarding "whether the government has properly invoked CERCLA Section 104 . . . and whether Plaintiffs' RCRA citizen suit claims constitute a 'challenge' to the government's resort to CERCLA." Joint Mot. Jurisdictional Discovery ¶ 8. Plaintiffs cite to *Phoenix Consulting, Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C. Cir. 2000), for support. Plaintiffs' reasoning is faulty.
In *Phoenix Consulting*, the Republic of Angola had appealed the court's denial of its motion to dismiss based on the Foreign Sovereign Immunities Act (FSIA). 216 F.3d at 38-40. In a FSIA case, the plaintiff alleges facts supporting one of FSIA's statutory exceptions to a foreign sovereign's immunity. *Id.* at 39. If the defendant challenges the "legal sufficiency" of those facts as supporting the exception, the court accepts those allegations as true and resolves the dispute. Our Circuit recognized, however, that where, as in *Phoenix Consulting,* the defendant disputes the underlying factual basis of jurisdiction (i.e., the factual basis for a sovereign immunity exception—in *Phoenix*

claiming that they are not challenging the removal action itself but the EPA's authority to

act under CERCLA at the Landfill would contradict the statute's express language

precluding "any challenges." *See* § 113(h).[8]

### B. CERCLA § 113(h) is not limited to claims filed after the EPA selects a response.

Second, plaintiffs raise, what appears to be, a novel issue in our Circuit: does §

113(h) bar claims filed *before* the EPA initiates a CERCLA response action. *See* Pls.'

Opp'n 23-32; *see also* Reply 16.  Notwithstanding plaintiffs' arguments to the contrary,

---

*Consulting*, the defendant disputed that a contract allegedly waiving immunity was ever
signed), a different approach is necessary.  In that situation, our Circuit held that a court
may not "deny the motion to dismiss merely by assuming the truth of the facts alleged by
the plaintiff and disputed by the defendant" but must go beyond the pleadings and resolve
any necessary factual disputes, through such procedures as limited discovery. *Id.*

Here, the defendants, however, have not challenged the factual basis for the
court's jurisdiction.  Instead, the defendants have asserted that a *legal* exception to the
court's jurisdiction applies under CERCLA § 113(h).  Plaintiffs' claimed factual dispute
is simply a fiction.  Plaintiffs do not dispute that that the BIA and EPA entered into the
Administrative Settlement at the Landfill. *See* Pls.' Opp'n 13.  Rather, they only
challenge whether the government has correctly invoked CERCLA and whether
plaintiffs' claims constitute a challenge under § 113(h). *See id.* at 13-16, 19-23, 32-39.

Most telling is that plaintiffs refrain from directly asserting that the Landfill does
not contain hazardous substances. *See* Pls.' Opp'n 19-23.  Plaintiffs instead claim only
that whether the Landfill includes "non-naturally occurring hazardous wastes that may
trigger CERCLA presents a disputed issue." *Id.* at 20.  Yet, plaintiffs' *own allegations*
claim the Landfill contains hazardous substances. *See* EPNG Am. Compl. § 105
(alleging defendants "have handled, disposed of, stored, treated or transported hazardous
waste . . . [at] the Highway 160 Dump Site [and] the [Landfill]"); Tribe Compl. ¶ 76
(same); *see also* Defs.'Reply 3-4 [Dkt. #77] (collecting cites in complaints for same).
Even if this Court were not barred from allowing jurisdictional discovery as an
impermissible challenge under § 113(h), this Court would not grant plaintiffs discovery
to contradict their own allegations.

[8]     To the extent plaintiffs suggest that the EPA did not adequately comply with the
notice and comment requirements in CERCLA 42 § 9622(i), *see* Pls.' Opp'n 20 n. 6,
plaintiffs have not properly raised those issues before this Court.

neither the statute's language, congressional intent, nor its application alongside RCRA

support their contention that the earlier filed claims are reviewable. *See* Reply 15-19, 25-

32.

First, a "plain language reading of § 113(h) demonstrates that the provision makes

no reference to the timing issues presented by Plaintiffs." *River Village West LLC v.*

*Peoples Gas Light & Coke Co.*, 618 F. Supp. 2d 847, 852 (N.D. Ill. 2008). Indeed, in

*River Village,* a district court rejected the very same argument advanced by the plaintiffs

here. That court noted that § 113(h) is specifically limited by five exceptions, "none of

which apply to citizen suits filed pursuant to RCRA or make exceptions based on the

chronology of the citizen suit[]." *Id.* Seeing no good basis to disagree, I will not read an

additional exception into the statute's text, especially since doing so would wrongly

imply a waiver of sovereign immunity. *See Mitchell I*, 445 U.S. at 538. Accordingly, §

113(h) removes jurisdiction over plaintiffs' claims at this juncture, irrespective of

plaintiffs' contention that this Court's subject matter jurisdiction "has been settled since

2007" and "cannot be divested simply because EPA decided in 2010 to enter into an

agreement." Pls.' Opp'n 25.[9]

Unfazed by the unlikelihood of their position, plaintiffs additionally claim that

Congress intended to bar only challenges filed after the government initiates a CERCLA

action. Pls.' Opp'n 25-27. Plaintiffs rely both on a House Report that references §

113(h)'s purpose as preventing "delays associated with a legal challenge of the particular

---

[9]     It is axiomatic that jurisdiction must be maintained throughout an entire case. *See*
*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).

removal or remedial action selected" and on other decisions applying § 113(h). *Id.* at 25-26 (quoting H.R. Rep. No. 99-253(V), at 25-26 (Nov. 12, 1985), 1986 U.S.C.C.A.N. 3124, 3148).  However, neither this report nor these cases reflect a congressional intent to constrict § 113(h).  They merely reinforce the (irrelevant) point that § 113(h) also bars challenges filed *after* CERCLA actions are selected.

    Finally, plaintiffs' claim that applying § 113(h) to plaintiffs' claims undermines the RCRA's own limitations provisions is, at best, incorrect.  Specifically, plaintiffs claim that applying the bar would undercut RCRA's notice and delay provisions, as well as its limitations on citizen suits.[10]  *See* Pls.' Opp'n 27-32.  But, Congress, in enacting CERCLA § 113(h) *after* RCRA was enacted, made no mention of RCRA or its citizen-suit provisions.  Therefore, this Court can only conclude that Congress not only contemplated RCRA when it enacted § 113(h), but also sought to withdraw jurisdiction for RCRA claims, even where such claims were otherwise authorized under RCRA.  *See River Village*, 618 F. Supp. 2d at 852-53; *see also Jach*, 245 F. Supp. 2d at 114.  The fact that the RCRA claims in this case were made before the EPA initiated its CERCLA response does not alter § 113(h)'s directive.  Rather, defendants are correct that the terms of RCRA are "simply not a relevant inquiry" here.  *See* Reply 18.

---

[10]     RCRA requires citizens to provide government agencies and alleged RCRA violators with notice and to delay beginning an action for a specified period after notice is given.  *See* 42 U.S.C. § 6972(b).  Further, RCRA itself bars commencing a RCRA citizen suit if the agency is "actually engaging in a removal action under section 104 of [CERCLA]," 42 U.S.C. § 6972(b)(2)(B)(ii), and where a "responsible party is diligently conducting a removal action, [RI/FS], or proceeding with a remedial action," 42 U.S.C. § 6972(b)(2)(B)(iv).

### C. Plaintiffs' RCRA claims challenge the EPA's Administrative Settlement.

As stated previously, § 113(h) bars suits, including claims under RCRA, that interfere with ongoing CERCLA cleanup responses. *Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO*, 62 F. Supp. 2d at 10; *Cannon v. Gates*, 538 F.3d 1328, 1332-36 (10th Cir. 2008); *Jach*, 245 F. Supp. 2d at 114-17. Plaintiffs' RCRA claims plainly meet this standard and constitute a challenge under § 113(h). *See* EPNG Am. Compl. ¶¶ 9-11 (requesting judgment declaring that defendants violated RCRA regulations and injunction ordering defendants to "perform cleanup activities necessary to abate present and imminent threats" caused by defendants' handling of solid or hazardous waste); Tribe Compl. ¶ 1 ("[T]he only appropriate remedy for the [Landfill] is 'clean closure,' i.e., the excavation and out-of Indian-country, off-site disposal of the waste materials . . . ."); 36-37 (requesting injunction requiring government to "perform clean-up activities necessary" and grant "assistance to the Navajo Nation to carry out the activities necessary to effect clean closure of the [Landfill]").[11]   Yet, plaintiffs insist that their RCRA claims do not "challenge" the CERCLA removal action.  Instead, they argue, [12] in essence that:

---

[11]      Plaintiffs also request jurisdictional discovery related to whether plaintiffs' "RCRA citizen suit claims constitute a 'challenge' to the government's resort to CERCLA." Joint Mot. Jurisdictional Discovery ¶ 8. Again, such discovery is prohibited by § 113(h). *See Raytheon Aircraft Co.*, 435 F. Supp. 2d at 1154.

[12]      The plaintiffs raise a third argument that need not be addressed here: their RCRA claims address other properties besides the Landfill. *See* Pls.' Opp'n 32-33. Although plaintiffs are correct that the RI/FS does not address the Highway 160 Site, the Mill Site, or the "other Properties" referenced in the complaints, *id.*, plaintiffs' complaints do not actually allege any RCRA claims at the Mill, *see* EPNG Am. Compl. ¶¶ 77-87; Tribe Compl. ¶¶ 74-83, and the plaintiffs' claims regarding the Highway 160 Site and the "other Properties" will be addressed separately in this opinion.

(1) the RCRA *violations* claims are not "necessarily incompatible" with the CERCLA action and may proceed concurrently with the selected action, *see* Pls.' Opp'n 33-35, and (2) the requested injunctive relief would not conflict with the RI/FS itself, *see id.* at 35-39.[13]  I disagree.

First, plaintiffs argue that their claims alleging violations of RCRA's requirements[14] are compatible with the CERCLA action and not barred by § 113(h). *See* Pls.' Opp'n 33-35; *see also* EPNG Am. Compl. ¶¶ 105-112, Prayer for Relief at F, G, I; Tribe Compl. ¶¶ 76-83, Prayer for Relief at A.1, I.  For authority, plaintiffs rely exclusively on *United States v. Colorado*, 990 F.2d 1565 (10th Cir. 1993).  Their

---

[13]     Plaintiffs also contend that the defendants are seeking to "re-style this litigation as CERCLA litigation" contrary to defendants' prior stipulation that CERCLA counterclaims need not be asserted in this litigation. *See* Pls.' Opp'n 34; Stip & Order 2 [Dkt. #36-1].  However, that stipulation, which predated the Administrative Settlement, does not bear on whether the plaintiffs are challenging the current CERCLA action.  To find otherwise would allow responsible parties to file suit simply for the purpose of forcing the government to bring a compulsory counterclaim and circumvent § 113(h)'s bar. *See* Reply 20; *Raytheon Aircraft Co. v. United States*, 532 F. Supp. 2d 1316, 1321 (D. Kan. 2008).
        As to defendants' actual counterclaim, that claim is dependent on this Court's award of relief under RCRA. *See* United States' First Am. Countercl. 7 [Dkt. #55]; United States' Opp'n Pl.'s Mot. Dismiss 2 [Dkt. # 59] ("Federal Defendants' reciprocal contingent counterclaim ensures that, should EPNG succeed on its RCRA Section 7002(a)(1)(B) claim, there is a vehicle for the Court to apportion cleanup responsibility equitably . . . ."); Reply 20.  Defendants concede that if plaintiffs' RCRA claims are dismissed, then this counterclaim should also be dismissed as moot. *Id.*  Because that counterclaim will be dismissed as moot, it may not support an exercise of supplemental jurisdiction under 28 U.S.C. § 1367.

[14]     The RCRA's citizen-suit provision, 42 U.S.C. § 6972, provides for, *inter alia*, suits for violations of regulations or requirements under RCRA, *see* 42 U.S.C. § 6972(a)(1)(A), and for suits against any person for contributing to the handling or disposal of solid or hazardous waste which may endanger health or the environment, *see* 42 U.S.C. § 6972(a)(1)(B).

reliance on that case, however, is misguided. In *Colorado*, the Tenth Circuit allowed the

state of Colorado, based on a separate CERCLA provision with a specific exception for

states, to proceed with its RCRA suit seeking compliance with Colorado's own EPA-

authorized state regulations during a remediation. *Id.* at 1578-79. The Tribe, however,

is not a "state" as that term is defined under RCRA. *See* 42 U.S.C. § 6903(31);

*Backcountry Against Dumps v. EPA*, 100 F.3d 147, 148 (D.C. Cir. 1996) (recognizing

that RCRA defines Native American tribes as municipalities and not states).

Moreover, plaintiffs' pursuit of a declaratory judgment and civil penalties (paid to

the U.S. Treasury) for alleged RCRA-regulations violations would additionally interfere

with the RI/FS here. *See* Pls.' Opp'n 35.[15] Defendants correctly point out that RCRA

Part 258 regulations, *see id.*, apply *only* to solid-, not hazardous-, waste landfills and that

only immediate compliance would preclude additional civil penalties, *see* 40 C.F.R. §

258.1(b); Reply 14-15. Thus, a court order requiring compliance with these regulations

would interfere with the EPA's decisions under the RI/FS. *See McClellan Ecological*

*Seepage Situation v. Perry,* 47 F.3d 325, 329-30 (9th Cir. 1995).

Second, as previously stated, the plaintiffs' claims would undoubtedly interfere

with the current CERCLA removal action because the Tribe has requested an injunction

---

[15] Other courts have found that § 113(h) bars RCRA claims alleging RCRA violations as well as requesting injunctive relief. *See, e.g., Cannon*, 538 F.3d at 1331, 1335-36 (10th Cir. 2008) (applying § 113(h) to bar suit based in part on RCRA violations and requesting injunction to remediate property); *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 329-31 (9th Cir. 1995) (holding that plaintiff's requested relief would interfere with CERCLA cleanup as it "for all practical purposes, seeks to improve on the CERCLA cleanup"); *Smith v. Potter*, 208 F. Supp. 2d 415, 421-22 (S.D.N.Y. 2002).

for clean-up activities and indicated that a specific type of clean-up ("clean closure" or

"the excavation and out-of Indian-country, off-site disposal of the waste materials ") is

necessary. *See* Tribe Compl. ¶ 1, I; *see also* EPNG Am. Compl. ¶ H.  Plaintiffs even

acknowledge that they request an injunction for "cleanup activities necessary to abate . . .

threats . . . caused by Defendants' treatment, storage, disposal or management of solid,

hazardous or radioactive wastes."  Pls.' Opp'n 36 (citing EPNG Am. Compl. ¶ H).

Incredibly, they contend, however, that because this request is "stated in general terms,"

it could not interfere with EPA's ability to select an appropriate remedy. *See id.*[16]

Clearly any such injunctive order by this Court would intrude upon the EPA's CERCLA

process even if the plaintiffs are unwilling to concede the same. *See Cannon*, 538 F.3d at

1335 (holding that RCRA claims seeking injunctive relief "would undoubtedly interfere

with the Government's ongoing removal efforts"). [17]

### D. The Administrative Settlement triggers § 113(h).

Plaintiffs also contend that the Administrative Settlement "is simply one among

---

[16]    Plaintiffs' attempt to distinguish several of the cases cited by defendants is
unavailing. *See* Pls.' Opp'n 38-39.  Although those cases involve more specific requests
for relief than those made here, none so limit the applicable reasoning. *See Razore*, 66
F.3d at 239-40; *Alabama v. EPA*, 871 F.2d 1548, 1559 (11th Cir. 1989); *Jach*, 245 F.
Supp. 2d at 115-16.

[17]    In their argument to constrict § 113(h) to existing (as opposed to pre-existing)
challenges, plaintiffs concede that the bar applies to at least five types of challenges. *See*
Pls.' Opp'n 26-27.  Defendants rightly point out that plaintiffs' claims squarely fit within
two of those same categories. *See* Reply 10-11.  Specifically, plaintiffs' challenge to
EPA's authority to act under CERCLA would constitute a challenge to "site investigation
[methods]." *See* Pls.' Opp'n 26; *see also* Reply 10.  Second, EPNG's attempt to avoid
liability for its waste disposal activities would constitute a challenge by a potentially
responsible party to its own liability. *See id.; see also* Reply 10-11.

many vague proposals over many years to study the [Landfill]" and does not adequately commit the defendants to the RI/FS to trigger the jurisdictional bar. Pls.' Opp'n 39-41. For support plaintiffs rely on a Seventh Circuit decision, *Frey v. EPA*, 403 F.3d 828 (7th Cir. 2005). That case held CERCLA does not bar a claim where the EPA could not point to "some objective referent that commits it and other responsible parties to an action or plan." *Id.* at 834.[18] Although not binding on this Court, that decision is distinguishable and thus of no value to this Court. Stated simply, the Administrative Settlement *mandates* that the BIA complete the RI/FS, including numerous specific tasks, within a set timeframe or face stipulated penalties. *See* Administrative Settlement ¶¶ 5, 6, 9, 11(t), 25, 31, 60; Pls.' Ex. 5, RI/FS Work Plan 112 [Dkt. ## 73-6, 7, 8]. Thus, the Administrative Settlement more than adequately triggers § 113(h).

## II.    Plaintiffs' RCRA Claims Related to the Highway 160 Site Are Moot and EPNG Lacks Standing to Bring These Claims Without the Tribe.

Because recent events have extinguished the controversy between the parties regarding the Highway 160 Site, plaintiffs' claims relating to that site are moot and must be dismissed. A federal court's jurisdiction is limited to "actual cases and controversies." *Utah v. Evans*, 536 U.S. 452, 459 (2002) (citing U.S. Const. art. III, § 2, cl. 1). To satisfy this requirement, a litigant must have suffered an actual injury that can be redressed by a favorable decision. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). Thus,

---

[18]    In *Frey*, the EPA had completed certain remedial actions at waste dumps but had not begun other remediation steps at the sites. 403 F.3d at 832, 834. Though the court recognized that environmental cleanups may be accomplished best in phases, the court found that a consent decree directing the EPA to negotiate future solutions "approximately one year following the completion of source control activities" did not suffice as an objective indicator. *Id.* at 834-35.

"even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Columbian Rope Co. v. West*, 142 F.3d 1313, 1316 (D.C. Cir. 1998) (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)).

Since plaintiffs' claims were originally filed, Congress has appropriated $5 million for the Highway 160 Site's remediation. *See* Bloedel Decl. ¶ 3. Further, the Tribe, in agreements with the DOE, assumed responsibility for remediating the site and released the United States from "any liability or claim . . . concerning such remedial action." Agreement Amendment 026 at 2 (executing waiver in accordance with 42 U.S.C. § 7915). Plaintiffs contend that these events cannot moot their claims because these funds may be insufficient to fully address all potential issues at the site. Pls.' Opp'n 42-43. Plaintiffs also argue that the waiver releases the United States only from "liability arising from the performance of the remediation work." *Id.* at 43. I disagree with each argument.

First, the agreement here includes a broad statement of purpose: "to complete remediation of the Highway 160 Site." Agreement Amendment 026, Attach. A at 1. Further, the waiver contains two separate clauses. The first releases the United States "of any liability or claim . . . concerning such remedial action." Agreement Amendment 026 at 2. The second releases the United States from "any claim arising out of the performance of any such remedial action." *Id.* Manifestly, the waiver's two clauses are

19

meant to accomplish separate tasks.  While plaintiffs may be "technically" correct that the waiver's second clause relates only to actual remediation-performance, the first clause is much broader and surely encompasses the full remediation of the Highway 160 Site. And, to the extent the Tribe claims that additional funds may be necessary to complete the current remediation project or any additional, desired projects at the site, *see* Pls.' Opp'n 42-43, those claims would also be covered by the waiver.  Accordingly, as the Tribe has agreed on a remediation plan and released the United States from liability related to the Highway 160 site, there is no longer a live controversy between the parties to support jurisdiction.[19]

Given that the Tribe's Highway 160 Site claims are moot, EPNG's claims must also be dismissed as EPNG cannot maintain constitutional standing separate from the Tribe. *See also* EPNG's Mem. Opp. Mot. Dismiss or Transfer 2 [Dkt. #11] (noting that had DOE remediated the sites under UMTRCA, this would "obviate the need for any ruling on EPNG's . . . claims under the [RCRA]").  The constitutional standing requirement also derives from Article III's case or controversy limitation, *Allen v. Wright*, 468 U.S. 737, 750 (1984), and demands three elements: injury-in-fact, traceability, and redressability, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Defendants argue that EPNG lacks standing primarily because it cannot show an injury-in-fact. Defs.' Mot. 26-27.  Defendants are correct that EPNG is "neither the present owner of the sites at issue, nor a nearby resident, business owner, or [sic]

---

[19]     Because I find that plaintiffs' claims related to the Highway 160 Site are moot, I do not need to address the defendants' argument based on the primary jurisdiction doctrine at this time. *See* Defs.' Mot. 24-26.

concerned citizen alleging that he or she suffers physical or aesthetic harm from contamination." *Id.* at 26.

EPNG raises essentially two arguments in response: (1) that the BIA's counterclaim supports standing and (2) that the threat of liability at the site supports standing. Pls.' Opp'n 45. But, because defendants have conceded that their counterclaim should be denied as moot upon dismissal of plaintiffs' claims, *see supra* note 13, the counterclaim will not support standing. And, any risk of liability here is far too remote to constitute an actual or imminent injury-in-fact. EPNG has not pointed to a single lawsuit, aside from one case related to the Mill that settled in 2000, *see* Defs.' Mot. 26-27, to support a conclusion that EPNG has or will suffer a concrete injury. *See* EPNG Am. Compl. ¶ 76; Pls.' Opp'n 45.[20] Therefore, plaintiffs' Highway 160 Site claims must also be dismissed.

---

[20]   In their opposition, plaintiffs note that the defendants' motion does not address certain "other Properties" alleged by plaintiffs to be contaminated. *See* Pls.' Opp'n 32-33; *see also* EPNG Am. Compl. ¶ 1, G; Tribe Comp. ¶ 76. Indeed, defendants only addressed these claims in their reply brief in support of their motion. *See* Reply 24-25. However, I agree with the defendants that plaintiffs have failed to sufficiently identify these "other Properties" to meet the pleading standards of Federal Rule of Civil Procedure 8(a). *See id.* Accordingly, plaintiffs' RCRA claims related to the "other Properties" will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the United States' Motion to Dismiss Plaintiffs' RCRA Claims [Dkt. # 65] and DENIES the Plaintiffs' Motion for Limited Jurisdictional Discovery [Dkt. # 74].  An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge